

# THE ATTORNEY GENERAL

## OF TEXAS

Grover Sellers
XXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable Homer Garrison, Jr., Director
Texas Department of Public Safety
Camp Mabry
Austin, Texas

Attention: Honorable J. B. Draper
              Drivers' License Division

Dear Sir:

Opinion No. O-6142
Re: Restoration of drivers license
where suspension was not an incident
of a conviction for a criminal offense.

We quote from your letter as follows:

> "We are in receipt of a copy of the above captioned
> opinion (O-6052), which states that the Governor has the
> power to restore a license that has been automatically sus-
> pended as a result of being convicted of the offense of
> 'driving a motor vehicle while under the influence of in-
> toxicating liquor,' but does not state whether or not the
> Governor has the power to restore the driver's license of
> a person whose license has been suspended by the Depart-
> ment under the authority vested in the Department under
> Section 22 of Article 6687b, Vernon's Texas Statutes.

> "Since the opinion furnished Mr. Guinn does not seem
> to answer the above question, we respectfully request that
> you advise us concerning same."

In our opinion No. O-6052, we ruled that the Governor has power,
after conviction, on the recommendation of the Board of Pardons and Paroles,
to remit forfeitures in all criminal cases; that this pardoning power would
extend to a driver's license which had been suspended automatically as a
part of the penalty after conviction for the offense of driving an automo-
bile while under the influence of intoxicating liquor. Our ruling in that
opinion would apply with equal force to the other offenses mentioned in
Section 24 of Article 6687v, V.A.C.S., for which an automatic suspension
is prescribed.

A different rule applies, however, to the question you present.
Section 22 of the same statute sets forth certain conditions under which
the Department of Public Safety, independent of a criminal conviction, is
authorized to suspend a driver's license. The Department, for example,

may suspend a license for such acts as being involved in traffic accidents resulting in personal injury or serious property damage, for habitually indulging in reckless or negligent driving or for failing to report to proper authority a traffic accident in which the driver may be involved.

Such acts, while forming the basis for suspension under the statute, may not necessarily amount to a violation of the law. In any event, the statute does not under such circumstances provide for an automatic suspension, but leaves for the discretion of the Board the question of whether it will proceed for such suspension.

We think the question you present is ruled by such cases as State vs. Hazzard, 247 Pac. 957; 48 A.L.R. 538. In that case a physician was convicted of manslaughter in the State of Washington. After conviction the State Medical Board, on the strength of the record in the criminal proceeding, cancelled her license to practice medicine. Subsequently, the Governor granted her a full pardon. The action was one to require a restoration of her license under the contention that the pardon had effected such restoration.

The State Supreme Court rejected such a doctrine, saying, in part:

". . . Now, if the revocation of the license of appellant can be said to be a portion of the penalty provided by law upon conviction of crime of manslaughter, then it might reasonably be argued that the pardon which releases from the penalty would return the license. . . ."

After pointing out this distinction, the Court said:

". . . Pardons may relieve from the disability of fines and forfeitures attendant upon a conviction, but they cannot erase the stain of bad character, which has been definitely fixed. . . ."

Then, quoting from another authority, the opinion continues:

". . . We think the effect of a pardon is to relieve the offender of all unenforced penalties annexed to the conviction, but what the party convicted has already endured, or paid, the pardon does not restore. When it takes effect, it puts an end to any further infliction of punishment, but has no operation upon the portion of the sentence already executed. A pardon proceeds not upon the theory of innocence, but implies guilt."

The court then reasoned in conclusion that since the cancellation of license was not "annexed" to the criminal conviction and was not a part of the penalty for the offense, that the Governor's constitutional power "to remit fines and forfeitures" did not and could not effect a restoration of the license. For Texas authorities to same effect, see Ex parte Green, 295 S.W. 910; 31 Tex. Jur. 1260, Pardon, Sec. 5. See also Baldi vs. Gilchrist, 198 N. Y. Supp. 493, incolving denial to a pardoned felon of a license to drive a taxicab.

The effect of these decisions is to hold that the sovereign power to remit forfeitures is limited to such forfeitures as are incidental to convictions in criminal cases. But the courts of this country have not construed such constitutional provisions to authorize executive clemency in instances where administrative agents, acting independently under legislative authority, have for good cause seen fit to cancel or suspend licenses or privileges for the protection of the safety, the health or the morals of the people. Such independent proceedings are not criminal but civil in nature and are beyond the reach of the pardoning power under the Constitution.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By  /s/ Elbert Hooper

Elbert Hooper
Assistant

ER:db:egw

APPROVED OCT 27, 1944
/s/ Carlos Ashley
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee
By BWB Chairman