## Ex Parte A. Green.

### No. 4401.  Decided May 18, 1927.

#### (295 S. W., 910).

**1.—Governor—Pardoning Power—Criminal Actions.**

The pardoning power of the Governor is restricted by the Constitution and statutes to criminal cases, i. e., criminal actions, and to be exercised only after trial and conviction.  Such actions or cases include only prosecutions by indictment or information for offenses defined in the Penal Code. (Const., Art. 4, Sec. 11; Code Crim. Proc., Art. 952 (1051).  (Pp. 516-518).

**2.—Habeas Corpus—Jurisdiction of Supreme Court.**

The Supreme Court has power under Art. 1737 (1529) Rev. Stats., to order release of one committed to the sheriff's custody on account of violation of a judgment entered by a court in a civil case (Rev. Stats., Art. 1737 (1592).  Only if the order was rendered in a civil case has the Supreme Court jurisdiction by writ of habeas corpus.  But in such civil case the Governor was without authority to pardon.  (P. 518).

**3.—Injunction—Intoxicating Liquors—Punishing for Contempt—Pardon.**

Relator had been adjudged guilty of contempt in violating an injunction against selling liquor (Art. 5110, Rev. Stats., 1925) and punished therefor by fine and imprisonment, and on habeas corpus before the Supreme Court was remanded to custody.  Thereafter the Governor issued a pardon and a remission of the fine.  On habeas corpus from the Supreme Court to obtain release because of such pardon it is held that the proceedings resulting in his commitment were in a civil, not in a criminal action; that the Governor possessed no power of pardoning the penalty inflicted; and that the relator should be remanded to custody.  (Pp. 518-522).

**4.—Cases Discussed.**

Ex Parte Green, 114 Texas, 388; Ex Parte Zuccaro, 72 Texas Crim., 214; Ex Parte Alderete, 83 Texas Crim., 360; Ex Parte Jackson, 113 Texas, 59; Casey v. State, 25 Texas, 385; Taylor v. Goodrich, 25 Texas Civ. App., 109, 40 S. W., 524; Ex Parte Allison, 97 Texas, 462; are discussed and followed.  (Pp. 518-520).

Original application to the Supreme Court by Green for writ of habeas corpus directed to H. C. Thornton, Sheriff of Stephens County, as respondent.

*T. B. Ridgell,* for relator.

The pardon is legal and the Governor had authority to grant it.   Ex Parte Grossman, 267 U. S., 87; State v. McGee Pub. Co., 224 Pac., 229.

*Sam. W. Davis,* and *O. H. Allred,* County Attorney, for respondent.   Cited:   Jetter v. State, 26 S. W., 49; Taylor v. Goodrich, 40 S. W., 516; Ex Parte Crow, 24 Texas, 13; Ex Parte Allison, 90 S. W., 492; Ex Parte Olson, 243 S. W., 773; Ex Parte Green, 114 Texas, 388; Littleton v. Fritz, 65 Iowa, 488; Eilenbecker v. Plymouth, 10 Sup. Ct., 424.   We think that the equitable powers of the court in protecting the citizens in their civil and property rights against the existence of a public nuisance are not subject to review by the chief executive of the State, even though in the exercise of such equitable power crime may be suppressed.   Contempts are matters *sui generis* and not criminal cases in the sense in which crimes are treated of by writers upon criminal law.   They are said to be of a criminal nature because they are not properly civil suits and because they involve the punishment of unauthorized acts:   Casey v. State, 25 Texas, 381; Crow v. State, 24 Texas, 13; Taylor v. Goodrich, 40 S. W., 515.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

Relator was remanded to the custody of the Sheriff of Stephens County under a decree and mandate of the Supreme Court, in accordance with an opinion holding valid a judgment of the District Court adjudging relator in contempt for the violation of an injunction forbidding the sale of intoxicating liquors. Ex Parte Green, 114 Texas, 388.   The punishment imposed on relator by the District Court was a fine of $250.00 and confinement in the county jail for ninety days.   The Governor thereafter, on March 12th, 1925, issued her proclamation granting relator a pardon, with remission of his fine.   On May 2, 1925, the Sheriff of Stephens County took relator into his custody in order to enforce the judgment of the District Court.   Relator was then granted a writ of habeas corpus by the Supreme Court.

The sole question presented by relator's application is whether the Governor's proclamation entitles him to his liberty.

The injunction violated by relator was expressly authorized by Art. 588¼rr of the Penal Code, being Art. 5110, Revised Statutes of 1925) empowering the district or county attorney to maintain a suit in the name of the State to enjoin the violation of any section of Chapter 78 of the Acts of 1919, Second

Called Session of the 36th Legislature. The Article concludes with these words: "This remedy by an injunction given in this section shall be cumulative of and in addition to other provisions of this act providing penalties or creating and defining crimes and punishments, and may be maintained with or without prosecutions or penalty suits herein otherwise provided for." Art. 588¼s of the Penal Code (embodied in Art. 5110 Revised Statutes of 1925) provides that any person violating the terms of any injunction issued under Article 588¼rr, (5110), "shall be punished for contempt by fine of not less than One Hundred ($100.00) Dollars, nor more than Five Hundred ($500.00) Dollars, and by imprisonment in the county jail for not less than thirty (30) days, nor more than six (6) months."

The argument for relator is grounded on the proposition that relator has been committed for a criminal as distinguished from a civil contempt, and that therefore the Governor's pardon was authorized and entitles him to be released. We agree that the relator's punishment was ordered for the purpose of vindicating the majesty of the law of upholding the authority of the Court. So, he appears to have been punished for a criminal rather than a civil contempt as those terms are ordinarily used. Ex Parte Grossman, 267 U. S., 111; Gompers v. United States, 233 U. S., 604, Ann. Cas. 1915D, 1047; Gompers v. Buck's Stove & Range Co., 221 U. S., 418, 34 L. R. A. (N. S.) 883; Clay v. Waters, 178 Fed., 385, 21 Ann. Cas. 900.

But the question as to the Governor's power to issue pardons in contempt cases in Texas is not resolved by simply determining the character of the contempt involved. Sec. 11 of Art. 4 of our Constitution defines the Governor's power in these words: "In all criminal cases, except treason and impeachment, he shall have power after conviction, to grant reprieves, commutations of punishment and pardons; and, under such rules as the Legislature may prescribe, he shall have power to remit fines and forfeitures." The Legislature has prescribed that fines may be remitted by the Governor only *after conviction in criminal actions,* providing by Art. 952 (1051) of the Code of Criminal Procedure that, "In all criminal actions, except treason and impeachment, the Governor shall have power after conviction, to remit fines and grant reprieves, commutations of punishment and pardons."

It will thus be seen that both the Constitution and the statutes plainly restrict the Governor's pardoning power to *criminal* cases, other than treason and impeachment, and require that the power be exercised only *after* conviction.

The Legislature in enacting Art. 952 (1051) of the Code of Criminal Procedure interprets "criminal cases" as "criminal actions." The Legislature declares in Art. 504 (568) of the Code of Criminal Procedure, "The primary pleading in a criminal action on the part of the State is the indictment or information."

The Legislature has confided to the Supreme Court or any justice thereof power to issue writs of habeas corpus "in any case where any person is restrained of his liberty by virtue of any order, process or commitment issued by any court or judge on account of the violation of any order, judgment, or decree theretofore made, rendered, or entered by such court or judge *in any civil cause.*" Art. 1737 (1529) Revised Statutes. The Supreme Court possesses no power whatever to order relator's release from the Sheriff's custody in this original habeas corpus proceeding, save in so far as such power has been conferred by Art. 1737 (1529). Hence, it is manifest that the very jurisdiction invoked by relator depends on the judgment complained of having been rendered in a *civil* cause. If such judgment was rendered in a civil cause, we have jurisdiction of relator's application, but then the fine and imprisonment was not imposed in any criminal case or criminal action, which was essential to the valid exercise of the Chief Executive's power to remit or pardon.

Soon after the District Court entered judgment requiring relator to pay a fine and suffer imprisonment for violation of the injunction, relator attacked that judgment by a habeas corpus application to this Court. The Court's opinion determined the application on its merits and thereby impliedly decided that the District Court's judgment was rendered in a civil case. Ex Parte Green, 114 Texas 388.

After the pardon proclamation was issued, relator sought his discharge from the district court on habeas corpus. Upon his discharge being refused by the District Court, relator appealed to the Court of Criminal Appeals. The appeal was dismissed in an opinion by Presiding Judge Morrow, in which it was said: "As applied to the present instance in which the appellant seeks relief from *the judgment of contempt entered against him in a civil case,* we are of the opinion that he should invoke the jurisdiction of the Supreme Court to give him any relief to which he is entitled before asking this court to discharge him." Ex Parte Green, 272 S. W., 162.

In holding that the judgment punishing relator for contempt was rendered in a civil suit and not in a criminal case, the Court of Criminal Appeals adhered to a long line of authorities. Ex Parte Zuccaro, 162 S. W., 844, was a case where the act enjoined

was, as here, a violation of the penal code. When Zuccaro applied to the Court of Criminal Appeals for release from a judgment imposing on him both a fine and imprisonment for contempt in doing the act forbidden by the injunction, the Court denied him relief on the ground: "That the case in which this punishment in contempt was imposed is a civil case we have no doubt. Any judgment which would have been rendered by the District Court of Tarrant County in said cause could only have been appealed, and by either party, to the civil courts of this State, and it could not have been appealed to this court. * * * * While the violation of said Article of the Code is a criminal offense, said suit is a civil case, and applicant is held by the Sheriff by virtue of process and commitment and order on account of the violation of an order of the said District Judge and Court in the very terms of said statute."

In Ex Parte Alderete, 83 Texas Crim. Rep., 360, the relator was adjudged in contempt of the District Court for selling and keeping for sale intoxicating liquors on certain premises in disobedience of an injunction. There it is declared: "In a contempt proceeding, where it appears that it grows out of an alleged failure to observe an order in a civil cause, this court will refuse to grant the writ relegating the party to his remedy in the Supreme Court."

This line of authorities from the Court of Criminal Appeals was cited with approval by the Supreme Court in the recent case of Ex Parte Jackson, 113 Texas, 59, when the Court, through Chief Justice Cureton, referring to Art. 1737 of the Revised Statutes, then Art. 1529, said: "It appears therefrom that our jurisdiction to issue the writ is limited to those instances where the confinement is by virtue of an order, process, or commitment issued on account of the violation of some order, judgment, or decree entered by a court or judge in the trial of a *civil case*. We have no general jurisdiction to grant the writ, as has the Court of Criminal Appeals, for the reason that this statute limits our power in the language just stated,—that is, we may inquire only into the restraint brought about by an order or process of the court issued because of the violation of some order, judgment, or decree in a *civil case*."

The Supreme Court at an early day was called upon to determine a motion to dismiss an appeal from a judgment of the district court imposing a fine for criminal contempt. At that time an Article of the Code of Criminal Procedure, numbered 719, provided that "an appeal may be taken by the defendant in every case where judgment of conviction has been rendered

against him in the district court." In dismissing the appeal, the Court said: "It is true that proceedings in cases of contempt are treated by the courts as in the nature of criminal proceedings. * * * They are matters sui generis, and not criminal cases in the sense in which crimes are treated of by writers upon criminal law. * * * * We are of opinion that, inasmuch as the provisions of the code of criminal procedure are intended to prescribe the manner in which the court shall proceed in the trial of offenses against the laws of this state, the 719th article must be understood to relate only to judgments of conviction for offenses known to the law as such—to offenses which are prosecuted by indictment or information. And in the use of the word "information" here, we mean it in the sense in which it is used in the code of criminal procedure, and not as applicable to motions or relations by attorneys for the purpose of having another attorney stricken from the roll." Casey v. The State, 25 Texas, 385, 386.

In a strong opinion by Chief Justice Fisher, denying the power of the Governor to pardon, save after conviction in a criminal case, the Austin Court of Civil Appeals truly said:

"If the supreme court in the case of Crow v. State, 24 Texas, 12, and Casey v. State, supra, had regarded contempts as criminal cases, under the law in this state, they would not have denied in the one case the right of appeal, and in the other the right of trial by jury; for the law, in granting the right of appeal and trial by jury, applies alike to all criminal cases. Hence these decisions, in our opinion, are direct authority against the proposition that proceedings in contempt are 'criminal cases,' as that term is understood and meant by the laws of this state." Taylor v. Goodrich, 40 S. W., 524.

Construing the constitutional provision for pardons, the final conclusion of the Court of Civil Appeals, in Taylor v. Goodrich, supra, was expressed as follows: "And it is believed, as before said, that the term 'criminal cases,' as there used, was intended to be understood as meaning those cases and crimes provided for in the Criminal Code, for which a conviction must be had in the manner provided by law for the trial of criminal cases."

Judge Gaines had previously announced, speaking for the Supreme Court: "A criminal case is defined to be 'an action, suit, or cause instituted to secure conviction and punishment for crime.' 1 Abb. Law Dic., 324." Scott v. The State, 86 Texas, 321, 322.

In upholding the validity of an Act of the Legislature authorizing punishment for violation of an injunction restraining one

from committing a crime, against the objection that thereby a person's liberty was twice put in jeopardy, the Supreme Court declared:

"It is true that if he commits the act which he is enjoined from committing, and such act be a violation of the penal laws of the state, he may under this statute be punished for the contempt, and also for the violation of the criminal law. But these are not 'the same offense.' In the former case he is punished for a violation of the orders of the court; and in the latter for an offense 'against the peace and dignity of the state.' One who makes an assault in the presence of the court, in such a manner as to constitute a contempt of court, is punishable, not only for the contempt, but also for the assault.  *  *  * We fail to see that there is any pecularity about the writ of injunction, or any peculiar sanctity about criminal or quasi criminal acts, which debar the legislature from providing that one may be enjoined by a suit in·equity from establishing a public nuisance—such as a gaming house." Ex Parte Allison, 99 Texas, 462, 463, and 464.

The statute which authorized the injunction in this case affirmatively declared the intention of the Legislature to give a remedy, to wit: injunction, which is an equitable, civil, remedy, in addition to the statutes defining criminal offenses and providing punishments for such offenses, after conviction. The Legislature went further and provided that the injunction should lie regardless of whether there was any criminal prosecution. With such plain declaration of legislative intent, we could not well hold otherwise than that a judgment enforcing such an injunction is a judgment rendered in a civil case, even though the question had not long previously been settled by decisions of this Court and of the Court of Criminal Appeals.

So, at last, we are confronted with this simple situation. Relator has violated an order made in a civil case and thereby has subjected himself to punishment for contempt. No judgment is shown to have been rendered against him, convicting him of any offense in any criminal case begun by indictment or information. The Constitutioin did not empower the Governor to issue a pardon to stop the enforcement of any judgment rendered in a civil case. But the Constitution did empower the Governor to remit any fine and relieve from any punishment imposed by any Texas court, after conviction, in any criminal case, other than treason and impeachment, as defined by the Code of Criminal Procedure, that is in any such case in which the State's primary pleading was an indictment or information. The Gov-

ernor was wholly without power to grant relator any relief from the judgment rendered in this civil suit for injunction and the attempted pardon furnishes no reason why the judgment of the District Court should not be executed.

It is therefore ordered that Relator be remanded to the Sheriff of Stephens County in order that the judgment of the District Court may be enforced.