HAROLD M. HANKAMER V. GEORGE H. TEMPLIN, CLERK OF THE SUPREME COURT.

No.A-455. Decided May 9, 1945.
(187 S. W., 2d Series, 549.)

*Harold M. Hankamer,* in person, of Houston, for relator.

On the contention that the pardon removed all penalties of the conviction and that he was entitled to restoration as an attorney, relator cites Scott v. State, 6 Texas Civ. App. 343, 25 S. W. 337; United States v. Swift, 186 Fed. 1002; Scrivnor v. State, 113 Texas Crim. App. 194, 20 S. W. (2d) 416.

*Grover Sellers,* Attorney General, *Carlos Ashley* and *Ocie Speer,* Assistants Attorney General, for respondent, and *Irl F. Kennerly, M. E. Sandlin, Dwight H. Austin, Thomas B. Blanchard, Raymond P. Elledge, Ernest H. Folk, R. Wayne Lawler, William H. Scott,* and *Thomas S. Taliaferro,* Grievance Committee of the Bar of Texas.

Petitioner should be denied a writ of mandamus because the full pardon and restoration of citizenship did not reinstate his license to practice law. Ex parte Green, 116 Texas 515, 295 S. W. 910; State v. Hazzard, 139 Wash. 487, 247 Pac. 957, 47 A. L. R., 538; In re Stephenson, 243 Ala. 342, 10 So. (2d) 1, 143 A. L. R. 166.

MR. JUDGE TAYLOR, of the Commission, delivered the opinion for the Court.

This is an original mandamus proceeding brought in this Court by Harold M. Hankamer against George H. Templin, Clerk of this Court, to compel him to enter petitioner's name as a member of the State Bar on the rolls of the Clerk of the Supreme Court upon payment of the tendered "membership fee."

The plaintiff alleges, in substance, that on the 23rd day of August, 1940, in the 34th District Court of El Paso County he was convicted of a felony upon jury trial on the charge of conversion of the funds of an estate, a felony, and sentenced to the penitentiary for a period of three years; that the judgment of conviction was affirmed. 142 Texas Cr. R. 23, 150 S. W. (2d) 749; that in the judgment of the court pronouncing the sentence upon him, his right to practice law was revoked; that after serving a part of his sentence he was paroled and later, on the 18th day of February, 1940, was granted by the Governor of the State a full pardon, which (deleting words, phrases and paragraphing not necessary for present purposes) reads:

"HAROLD M. HANKAMER, was convicted in the District Court of El Paso County, Texas, and on October 11, 1940, was sentenced to three years confinement in the State Penitentiary for

Conversion of (an) estate. * * * The Board of Pardons and Paroles recommends that he be granted full pardon and restoration of citizenship. His certificate of discharge shows that he was discharged from the penitentiary, December 17, 1943, while on a conditional pardon. The subject has filed an affidavit dated February 3, 1944, to the effect that he is not at this time under indictment for any offense involving moral turpitude, either felony or misdemeanor. Hon. Sam Goldfarb, Chairman, Bexar County Parole Board, requests that the subject's citizenship be restored. Acting upon and because of the recommendations of the Board, NOW, THEREFORE, I * * * by virtue of the authority vested in me under the constitution and laws of this state, upon the recommendations hereinabove cited and for reasons herein set out * * *, do hereby grant unto the said HAROLD M. HANKAMER, A FULL PARDON AND RESTORATION OF CITIZENSHIP including compentency to testify in any and all courts, together with full rights of suffrage and benefits and obligations attendant therewith."

Petition does not question the validity of the judgment of the Court revoking his license to practice. He apparently concedes its validity, questioning only the summary and irregular manner in which his disbarment was accomplished. He stated to the Clerk in making tender of "membership fees" that "your record will reflect I was disbarred by judgment" of the said district court of El Paso County, Texas. He contends, however, that because the order revoking his license was irregularly contained in the "judgment of sentence" in the criminal case in which he was convicted, the granting of the full pardon shown above restored his right to practice law; and that therefore he is entitled to have the Clerk of this Court recognize such right and to reenter his name upon the rolls as a practicing attorney in this State. Petitioner's further contentions in this respect are set out in his brief as follows:

"* * * since such revocation of petitioner's license to practice law was * * * a part of the punishment * * * assessed against petitioner as a result of such conviction—this portion of the penalty and punishment was also released by the full and unconditional pardon granted petitioner by the Governor, thereby entitling the petitioner to the relief prayed for in his petition for writ of mandamus."

■ Assuming that the order cancelling petitioner's license to practice law is valid, as seems to be assumed by him, we are confronted only with the question as to whether the granting of the pardon by the Governor had the effect to restore his

right to practice law. In our opinion, the pardon and restoration of citizenship did not reinstate petitioner's privilege to practice, nor restore his former office as an attorney. Ex parte Stephenson, 243 Ala. 342, 10 So. 1, 143 A. L. R. 166. The governor's power to pardon is limited to criminal cases (treason and impeachment excepted) after conviction. Art. 4, Sec. 11, Constitution of Texas. "A criminal case is * * * 'an action, suit, or cause instituted to secure punishment for crime,' 1 Abb. Law Dic. 324"; Ex parte Green, 116 Texas 515, 295 S. W. 910. The disbarment of an attorney is a civil proceeding, and while the penalty assessed against the accused was punishment in a sense, it was not a part of the penalty as such, assessed against him.

Not only has the governor no power to reinstate a privilege to practice law, but the "full pardon" granted petitioner does not purport to do so. It recites the restoration of citizenship only, "including competency to testify * * *, together with full rights of suffrage and benefits and obligations attendant therewith." As pointed out in the case of Re Egan, 52 S. D. 394, 218 N. W. 1, it is elementary that a pardon is an act of clemency, and does not restore to a disbarred attorney his office as such, and "does not restore to him that good character which he is required to possess upon being admitted to the bar * * *."

The full penalties and disabilities which attached in virtue of his conviction and restored to him his civil rights; but, as pointed out in Ex parte Stephenson, supra, "the pardon and restoration of political and civil rights do not of themselves restore the petitioner to the office of an attorney." They "merely open the door that would not otherwise be open to him." As stated in 7 C. J. S., Attorney and Client, sec. 41, p. 815, "Ordinarily a pardon does not extend to disbarment proceedings or require a court to reinstate an attorney but does no more than open the door to an inquiry that would otherwise be barred, * * *." We approve also the following statement of the law from 5 Amer. Jur., Attorneys at Law, Sec. 301, p. 443, with respect to the reinstatement of a disbarred attorney: "Nor will a pardon of itself restore to practice an attorney who has been disbarred by reason of a conviction."

The following statement in the leading case on the subject, Re-operative Law Company, 198 N. Y. 479, makes it clear that the right to practice law is not a personal right, but a franchise, or privilege:

"The practice of law is not a business open to all, but a personal right, limited to a few persons of good moral character, with special qualifications ascertained and certified after a long course of study, both general and professional, and a thorough examination by a state board appointed for the purpose. The right to practice law is in the nature of a franchise from the state, conferred only for merit. It cannot be assigned or inherited, but must be earned by hard study and good conduct. It is attested by a certificate of the Supreme Court, and is protected by registration. No one can practice law unless he has taken an oath of office and has become an officer of the court, subject to its discipline, liable to punishment for contempt in violating his duties as such, and to suspension or removal."

Petitioner relies upon Scrivnor v. State, 113 Texas Cr. R. 194, 20 S. W. (2d) 416, in which Judge Hawkins, the now eminent presiding judge of that court, dissented. The holding of the majority of the Court was merely that the state could not utilize a former conviction for the purpose of increasing the penalty upon a subsequent conviction of an accused where the former conviction had been fully relieved by pardon. Furthermore, the case was subsequently overruled by the present Court of Criminal Appeals in the recent case of Jones v. State, 141 Texas Cr. R. 426, 147 S. W. (2d) 508, in which the Court, speaking through Judge Beauchamp, points out that the governor "has no power to restore" to the person convicted his former status "which may have been cancelled by reason of his conviction"; that the governor can forgive the penalty but has no power to direct the courts to forget the conviction.

■ We hold also, since a fair analysis of the petition discloses that petitioner seeks a reinstatement in the practice rather than an original entry of his name on the roll of attorneys, that his remedy is by application to the 34th district court for reinstatement in accordance with the applicable statutes, and the rules relating to disbarment approved by this court February 22, 1940. *See in this connection Burns v. State, 129 Texas 303, 103 S. W. (2d) 960.

The application for the writ is in all things denied, and it is so ordered.

Opinion adopted by the Supreme Court May 29, 1945.

---

* See Article 12, Section 14, Rule Governing State Bar of Texas, in pamphlet form only. Also Arts. 312, 313, 316 R. S.