Clark, Judge.
Does the imposition of a requirement that a juvenile delinquent contribute free labor to the Parks and Recreation Department amount to involuntary servitude in violation of his constitutional rights? Is the imposition of such requirement similar to a monetary fine which is prohibited? These interesting questions are presented for determination.
1. Before considering these queries we must first dispose of those enumerations contending error in the ruling by the juvenile court judge that appellant was guilty of committing criminal trespass.
The evidence was in direct conflict. The state’s eyewitness testified he saw appellant strike and throw a match into a school rest room trash can which contained dry paper and which consequently burst into flame. This witness said he did not see appellant use the match to light a cigarette. This was contradicted by the appellant who testified he used the match to light a cigarette, *351 extinguished it before tossing it into the trash container and had no intention of starting a fire. The school’s assistant principal testified the damage caused school property was less than $25.
Although appellant argues there was no evidence of the requisite intent to damage property as required by Code Ann. § 26-1503 (a), the evidence was sufficient to show a mens rea. "A person will not be presumed to act with criminal intention, but the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted.” Code Ann. § 26-605. Sufficient evidence exists here to support a finding that appellant had committed the offense. "It is settled law that one is presumed to intend the necessary and legitimate consequences of that which he knowingly does, and that the intention with which an act is done is peculiarly a question for a jury.” Cole v. State, 118 Ga. App. 228 (163 SE2d 250). The fact finder here is the juvenile court judge who has determined the intention from his observation of the witnesses and their testimony. We will not interfere with his decision in this case. "Conflicts in evidence being for the decision of the triors of fact, where issues of fact are in conflict, this court passes only on the sufficiency and not on the weight of the evidence. [Cit.]” Allen v. State, 110 Ga. App. 293, 294 (138 SE2d 329).
2. Having found no error in the court’s ruling on delinquency we turn to a consideration of appellant’s attacks upon the validity of the punishment. As a condition to the offender being placed on probation for one year, he was required to "contribute 100 hours to Parks and Recreation Department of DeKalb County.” (R. 13). Appellant’s able attorney argues this condition to be invalid for two reasons. These are: (1) the court in effect was placing a fine upon the offender contrary to the ruling of E. P. v. State of Ga., 130 Ga. App. 512 (203 SE2d 757) that no statutory authority exists for imposing a monetary fine on a minor adjudged to be delinquent; and (2) this would constitute involuntary servitude in violation of the juvenile’s constitutional rights.
We hold that neither attack has merit in the light *352 of the provisions of our Juvenile Court Code and the nature of probation. The permeating premise of our statute is that juvenile offenders can be rehabilitated and transformed into productive citizens by a system specially designed to achieve those ends. One of the methods provided in that statute is probation. Code Ann. § 24A-2303. In P. R. v. State of Ga., 133 Ga. App. 346, we made an exhaustive examination into this subject of probation conditions and concluded that a requirement of restitution was permissible because it was not in the nature of a fine. The reasoning in that case applies here in two respects. The first is that designation of work of a public purpose for destruction of public property is akin to restitution and does not resemble a monetary penalty. Secondly, useful services for the public good are in the pattern of probation, which is a specialized judicial tool and is helpful towards achieving the statute’s pervading purpose of producing a good adult citizen. As the trial judge stated: "This is specific action designed to foster in him an understanding that he’s got some responsibilities and what it takes to create something as opposed to going around destroying things.” (T. 28). It is constructive rather than punitive. It comes within the statutory mandate that juvenile court judges are to make such disposition of a delinquent child as is "best suited to his treatment, rehabilitation, and welfare.” Code Ann. § 24A-2302.
Nor does this condition amount to prohibited involuntary servitude. In Loeb v. Jennings, 133 Ga. 796 (67 SE 101) aff'd 219 U. S. 582, Justice Joseph Henry Lumpkin[1] wrote an opinion holding that a violator of a municipal ordinance could be required to labor on the streets or other public works of a city and this would be neither involuntary servitude nor cruel or unusual punishment. His ruling was based on the constitutional *353 exclusion of "punishment for crime.” Even though juvenile court proceedings are not criminal proceedings (Robinson v. State, 227 Ga. 140 (179 SE2d 248); Huff v. Walker, 125 Ga. App. 251 (187 SE2d 343)) and Code Ann. § 24A-2401 declares that an adjudication order is non-criminal, nevertheless, we must recognize "the quasi-criminal aspects of juvenile law.”[2] Additionally, the courts frequently apply criminal law procedural safeguards to juveniles. See Kent v. United States, 383 U. S. 541 (86 SC 1045, 16 LE2d 84) (due process); In re Gault, 387 U. S. 1 (87 SC 1428, 18 LE2d 527) (right to counsel); and In re Winship, 397 U. S. 358 (90 SC 1068, 25 LE2d 368) (beyond reasonable doubt). The Juvenile Court Code defines a delinquent act as one "designated a crime by the laws of Georgia.” Code Ann. § 24A-401 (e) (1). Accordingly, a juvenile court order of this type would come within the constitutional exception as it is "punishment for crime,” even though it is rehabilitative rather than punitive.
Moreover, in Garner v. Wood, 188 Ga. 463 (4 SE2d 137) our Supreme Court ruled that in a parens patriae statute dealing with females under 18 years of age incarceration in the Georgia Training School for Girls was not violative of the constitutional ban on involuntary servitude even though cases arising under that statute were not "criminal proceedings.”
We reiterate that the requirement of performing public service is in accord with the theme of probation. In considering the State-Wide Probation Act we pointed out in Falkenhainer v. State, 122 Ga. App. 478, 480 (177 SE2d 380) that our statute was not exclusive in its provisions and that "the court has authority to impose restrictions not specifically listed therein. [Cit.]” This reasoning is most apropos to the letter and spirit of our enlightened Juvenile Court Code with its broad probation *354 provisions and its curative goal of rehabilitation. The instant public-work condition conforms to today’s approach which courts make in seeking alternatives to jail as reported at pages 78 and 79 of the September 2, 1974, issue of Time Magazine under the caption of "Creative Punishment.” This innovative and imaginative approach seeks to avoid "a trauma left on the victim or the community” while aiming to give the offender a chance "for a sense of satisfaction and accomplishment that prison rarely offers.” In short, to make the punishment fit the offender rather than follow the Mikado’s musical mandate: "Let the punishment fit the crime.”
Submitted September 10, 1974
Decided November 18, 1974.
Joseph M. Winter, for appellant.
Kathryn Anne Workman, Solicitor, for appellee.

Judgment affirmed.

Bell, C. J., and Quillian, J., concur.

 This was the third Lumpkin to serve on the Supreme Court bench. Joseph Henry Lumpkin (1799-1867) was Georgia’s first Chief Justice. His grandson (1856-1916) had the same name as his illustrious ancestor. Samuel Lumpkin (1848-1903) was the great-nephew of the Chief Justice.

 This phrase is used by Emory Professor Lucy S. Henritze in her perceptive article entitled "Juvenile Law and the Juvenile Court System.” 24 Mercer Law Rev. 187. Her reference was specifically to those proceedings in instances where the juvenile is charged with delinquent or unruly conduct.