**In the Matter of S.C.**

**Nos. 3–88–144–CV, 3–89–087–CV.**

Court of Appeals of Texas, Austin.

May 9, 1990.

Rehearing Overruled June 13, 1990.

Douglas C. Wise, Austin, for appellant.

Ronald Earle, Dist. Atty., Ana Luisa Morales, Asst. Dist. Atty., Austin, for appellee.

Before POWERS, CARROLL and ABOUSSIE, JJ.

## ON MOTION FOR REHEARING

CARROLL, Justice.

The opinion of the Court in this cause, handed down on March 21, 1990, is withdrawn and the following opinion is substituted therefor.

This appeal involves several constitutional challenges to the Texas determinate sentencing statute for violent juvenile offenders. The State alleged that appellant committed murder at the age of 16. A jury found that he engaged in delinquent conduct and committed him to the Texas Youth Commission subject to transfer to the penitentiary for a total of 30 years. At the age of 18, appellant was transferred from the Texas Youth Commission to the penitentiary to serve out the remainder of his 30 year sentence. We will affirm the judgment of adjudication and disposition, and we will affirm the order of transfer to the penitentiary.

## BACKGROUND

The Texas determinate sentencing statute provides for the prosecution of juveniles who commit violent offenses so that the State may assert control over the

youthful offender after the juvenile reaches the age of 21. Under the statute, the juvenile court presides over an adjudication and disposition proceeding that confers to the juvenile many of the procedural protections that are provided to an adult during a criminal proceeding. Tex.Fam.Code Ann. § 54.03 (1986 & Supp.1990).

After the juvenile court declined to transfer appellant to the criminal district court for prosecution as an adult, the district attorney obtained from the grand jury an approved petition that alleged that appellant committed murder in violation of section 19.02 of the Texas Penal Code. Tex. Fam.Code Ann. §§ 53.045 and 54.02 (Supp. 1990). Pursuant to an adjudication hearing, a jury found that appellant committed murder; pursuant to a subsequent disposition hearing, the jury recommended that appellant be committed to the Texas Youth Commission with eventual transfer to the penitentiary for a total of 30 years. Tex. Fam.Code Ann. §§ 54.03 and 54.04 (Supp. 1990).

Before appellant's 18th birthday, the juvenile court held a release hearing and ordered appellant transferred to the penitentiary at age 18 to serve the remainder of his determinate sentence. Tex.Fam. Code Ann. § 54.11(i)(2) (Supp.1990); Tex. Hum.Res.Code Ann. § 61.084(b) (Pamp. 1990). On March 23, 1989, appellant was ordered transferred to the penitentiary. Appellant now challenges his adjudication and his transfer to the penitentiary in this combined appeal.

## CONTENTIONS ON APPEAL

Appellant's fourteen points of error break down into seven general contentions: (1) that the determinate sentencing statute violates his right to equal protection of the laws under the United States and Texas Constitutions; (2) that the statute violates his right to due process of law and due course of law under the United States and Texas Constitutions, respectively; (3) that he was improperly held to answer for a criminal offense and sentenced to the penitentiary without indictment; (4) that his prosecution violates section 54.02(g) of the Texas Family Code and section 8.07 of the Texas Penal Code because he was criminally prosecuted; (5) that the determinate sentencing statute imposes an unconstitutional involuntary servitude on him and violates the Federal Anti-peonage Act; (6) that he was denied his right to trial by jury, his right to be confronted with witnesses against him, and his privilege against self-incrimination, with respect to the issue of whether he was between the ages of 10 and 17 at the time of the delinquent conduct as required by the Texas Family Code; and (7) that the assistant district attorney who prosecuted him should not have participated because the attorney had previously represented him in a substantially related matter.

## EQUAL PROTECTION OF THE LAWS

In his second point of error, appellant contends that because he has been transferred to the penitentiary "without possibility of parole," the determinate sentencing statute violates his right to equal protection of the laws under the fourteenth amendment of the United States Constitution as well as article I, section 3 of the Texas Constitution. Appellant maintains that because his adjudication under the Texas Family Code is "not a conviction of a crime" he cannot become eligible for parole under the Texas Constitution. Tex.Fam. Code Ann. § 51.13(a) (1986).

According to appellant, he cannot become eligible for parole despite the explicit pronouncement in the Texas Government Code that "[a]ll laws relating to ... eligibility for release on parole or mandatory supervision apply to a person transferred to the [penitentiary] by the youth commission...." Tex.Gov't Code Ann. § 498.053(c) (Pamp.1990). Appellant premises his contention on the Texas Court of Criminal Appeals' interpretation of article IV, section 11 of the Texas Constitution in *Rose v. State,* 752 S.W.2d 529 (Tex.Cr.App. 1988), and several other cases holding that the governor's clemency power extends only to "criminal cases."

He argues that the legislature unconstitutionally expanded the power of the Texas

Board of Pardons and Paroles ("Parole Board") at the expense of the judiciary, thus violating the separation of powers doctrine. *See* Tex. Const. art. II, § 1 (1984); *Rose*, 752 S.W.2d at 533–534. That is, if his adjudication and disposition constitutes a final judgment in a civil case, the Parole Board has no authority to disturb the final judgment in any way. *See, e.g., Hankamer v. Templin*, 143 Tex. 572, 187 S.W.2d 549 (1945); *Ex parte Green*, 116 Tex. 515, 295 S.W. 910 (1927); *Taylor v. Goodrich*, 25 Tex.Civ.App. 109, 40 S.W. 515 (1897, no writ). Therefore, he asserts that he cannot be paroled, and that this predicament violates his right to equal protection of the laws.

We disagree. The Parole Board does have the constitutional authority to provide appellant with the opportunity for parole pursuant to section 498.053(c) of the Texas Government Code. The enactment of section 498.053(c) merely codified the Parole Board's preexisting constitutional authority to grant parole to those persons who have been adjudicated under the determinate sentencing statute and transferred to the penitentiary for specific violent conduct *substantively defined by the Texas Penal Code.*

▄▄▄ Our analysis begins with the following presupposition and rule: An act of the legislature is presumed to be constitutional, and a challenger bears the burden of demonstrating that it is unconstitutional. *Texas Pub. Bldg. Auth. v. Mattox*, 686 S.W.2d 924, 927 (Tex.1985). In addition, no act of the legislature will be declared unconstitutional unless some provision of the Constitution can be cited that *clearly* demonstrates the invalidity of such act. *Texas Nat'l Guard Armory Bd. v. McCraw*, 132 Tex. 613, 126 S.W.2d 627, 634 (1939). In support of this precept, the Texas Supreme

Court in *McCraw* quoted Cooley from his work on constitutional limitations:

> The question whether a law be void for its repugnancy to the Constitution is at all time a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case.... *The opposition between the Constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other.*

126 S.W.2d at 634. (emphasis added).

For various policy reasons, the legislature created a juvenile justice system separate from the adult criminal process.[1] *See* Tex.Fam.Code Ann. § 51.01 (1986). Although a determinate sentencing adjudication of a juvenile is primarily governed by the Texas Rules of Civil Procedure,[2] it is, in substance, a proceeding to determine whether a juvenile violated one or more of six enumerated violent offenses defined in the Texas Penal Code. Tex.Fam.Code Ann. §§ 51.17 and 53.045(a) (1986 & Supp.1990). Citing *Hankamer*, 187 S.W.2d 549, *Green*, 295 S.W. 910, and *Taylor*, 40 S.W. 515, for the proposition that the governor's clemency power extends only to "criminal cases," appellant contends that his civil adjudication and incarceration is not subject to Parole Board authority. We disagree.

In *Hankamer*, the court held that the disbarment of an attorney is a civil proceeding, and, thus, is not within the pardoning power of the governor. 187 S.W.2d at 550. The court noted that a criminal case "is a cause instituted to secure a conviction and punishment for a *crime*." *Id.* (Emphasis added.) Here, appellant was adjudicated and transferred to the penitentiary because he too committed a penal offense —murder. *See* Tex.Pen.Code Ann. § 19.02 (1989). Because of his status as a juvenile, the State proceeds against him in a differ-

---

**1.** The legislature simply could have provided for the prosecution of all teenage offenders in the adult criminal system. Before the adoption of the determinate sentencing statute, several bills were considered that would have lowered the age for transferring a juvenile offender to criminal court from 15 to 13. Dawson, *The Third Justice System: The New Juvenile–Criminal System of Determinate Sentencing for the Youthful*

*Violent Offender in Texas*, 19 St. Mary's L.J. 943, 953 (1988) (hereinafter "New Juvenile–Criminal System").

**2.** Many constitutional rights and procedures afforded to criminal defendants are incorporated into the juvenile adjudicative process. *Lanes v. State*, 767 S.W.2d 789, 794 (Tex.Cr.App.1989).

ent manner than if he were an adult. In order to eliminate the taint of criminality after incarceration, his penal code violation is characterized as delinquent conduct rather than criminal conduct, but the offense remains the same. *See* Tex.Fam.Code Ann. § 51.01(3) (1986).

In *Green,* the court held that the governor could not pardon an individual for contempt that was imposed due to his violation of a civil injunction order. 295 S.W. at 913. The court observed, however, that gubernatorial clemency is appropriate for causes "in which the state's primary pleading was an indictment...." *Id.* Here, appellant was adjudicated pursuant to a petition that was issued by a criminal grand jury in the same manner as a criminal indictment. *See* Tex.Fam.Code Ann. § 53.045 (Supp.1990). Thus, the juvenile petition was the practical equivalent of a criminal indictment for purposes of incarceration in the penitentiary. *In re R.L.H.,* 771 S.W.2d 697, 699 (Tex. App.1989, writ denied); Dawson, *New Juvenile–Criminal System,* 19 St. Mary's L.J. at 976.

In *Taylor,* the court held that a proceeding for contempt is not a criminal action in which the governor has constitutional pardoning power. 40 S.W. at 524. The court reasoned that the term "criminal cases" meant "those cases and crimes provided for in the Criminal Code," for which the adjudication is conducted in a manner provided by law for criminal cases. *Id.* at 523. The court concluded that because a person is not afforded the right to appeal or the right to trial by jury in contempt proceedings, such causes were not "criminal cases." *Id.* at 524. In contrast, appellant here was afforded the right to trial by jury along with many other criminal procedures and protections. *See, e.g.,* Tex.Fam.Code Ann. § 54.03 (Supp.1990); *see also Lanes,* 767 S.W.2d at 794 (numerous fundamental constitutional rights are provided to juvenile defendants, including double jeopardy protections and the requirement of proof beyond a reasonable doubt). Finally, the court in *Taylor* initially observed that

> [i]f the words "criminal case" are confined to the crimes mentioned in the Penal Code, and should be held to be con-

strued only as the terms "crime," and "offense" are therein defined, there would be little difficulty in reaching a correct conclusion upon this question; for the question of contempt is not mentioned in the Penal Code, and is not there characterized as a crime or offense.

40 S.W. at 523. Appellant here *was* found to have committed an offense *defined by the Penal Code. See* Tex.Pen.Code Ann. § 19.02 (1989).

 With *Hankamer, Green,* and *Taylor* in mind, we note that words are usually given a broad and liberal meaning, if necessary, in order to achieve the purpose of the constitutional provision in question. *Brown County Water Imp. Dist. No. 1 v. Austin M. & G. Co.,* 135 Tex. 140, 138 S.W.2d 523, 525 (1940). Appellant does not dispute that one of the purposes of article IV, section 11 is to provide constitutional authority for the reduction of sentences of those appropriate persons serving penitentiary time for violent offenses defined by the Penal Code. Tex. Const. art. IV, § 11 (Supp.1990). Therefore, a *broad* and *reasonable* reading of the phrase, "all criminal cases," in article IV, section 11 and an analysis of *Hankamer, Green,* and *Taylor* lead us to the conclusion that a person serving a sentence in the penitentiary for murder pursuant to the determinate sentencing statute is subject to Parole Board authority. *See Brown County,* 138 S.W.2d at 525; *Neal v. Sheppard,* 209 S.W.2d 388, 389 (Tex.Civ.App.1948, writ ref'd).

Finally, appellant cites *Rose,* 752 S.W.2d at 533, 534, for two propositions: (1) the Parole Board remains in the executive branch despite the 1983 amendment to article IV, section 11 of the Texas Constitution; and (2) the 1983 amendment provides no greater scope of legislative authority over parole laws than had existed previously. In *Rose,* the Court of Criminal Appeals held that article 37.07, section 4(a) of the Code of Criminal Procedure, as it was then constituted, violated the Texas separation of powers doctrine. 752 S.W.2d at 535. Section 4(a) provided for the consideration of parole laws by juries when they assess

criminal punishment. Thus, *Rose* addressed a situation wherein the legislative branch abrogated the executive branch's parole authority by creating the judicial parole law instruction. *Barefield v. State*, 784 S.W.2d 38 (Tex.Cr.App.1989).

■ Here, no separation of powers problem exists; the legislature codified the Parole Board's preexisting constitutional authority over persons transferred to the penitentiary pursuant to the determinate sentencing statute. *See* Tex.Gov't Code Ann. § 498.053(c) (Pamp.1990). We reach this conclusion because (1) appellant was incarcerated for the commission of a Penal Code offense; (2) he was adjudicated pursuant to a petition that was procedurally and substantively equivalent to a criminal indictment; (3) he was tried in a quasi-criminal proceeding that provided him with fundamental criminal constitutional protections; and (4) such a conclusion necessarily flows from a broad and reasonable reading of the phrase, "all criminal cases," in article IV, section 11 of the Texas Constitution. Tex. Const. art. IV, § 11 (Supp.1990); *Hankamer*, 187 S.W.2d at 550; *Brown County*, 138 S.W.2d at 525; *Green*, 295 S.W. at 913; *R.L.H.*, 771 S.W.2d at 699; *Neal*, 209 S.W.2d at 389; *Taylor*, 40 S.W. at 523, 524; Tex.Fam.Code Ann. §§ 53.045(a)(1) and 54.-03 (Supp.1990).

Because we conclude that appellant can become eligible for parole, he does not suffer unequal protection of the laws. U.S. Const. amend. XIV, § 1; Tex. Const. art. I, § 3 (1984).

## DUE PROCESS AND DUE COURSE OF LAW

■ In his third point, appellant contends that the determinate sentencing statute violates his rights to due process of law and due course of law under the fifth and fourteenth amendments of the United States Constitution and article I, section 19 of the Texas Constitution, respectively, because he is incarcerated in the penitentiary without possibility of parole. Due process and due course of law rights are at stake when an individual is treated in a unique or arbitrary way; therefore, appellant's due course and due process of law claims are not relevant to this appeal because he has not asserted that he was treated in an irregular manner. *R.L.H.*, 771 S.W.2d at 700, n. 2.

## "PROSECUTION WITHOUT INDICTMENT"

■ In points ten and eleven, appellant claims that he was prosecuted and imprisoned in the penitentiary without indictment by a grand jury in violation of article I, section 10 of the Texas Constitution and article 36.01(a)(1) and (2) of the Texas Code of Criminal Procedure. Appellant essentially implies that a statute that authorizes penitentiary time as the result of a juvenile proceeding is void. We disagree.

A proceeding in juvenile court is initiated by a "petition." Tex.Fam.Code Ann. §§ 53.04 and 53.045 (1986 & Supp.1990). Appellant's implicit conclusion "incorrectly assumes that a petition cannot function as an indictment." [3] *R.L.H.*, 771 S.W.2d at 699. In *R.L.H.*, we affirmatively resolved the issue of whether a juvenile petition constitutionally functions as an indictment; therefore, we find that appellant has not been incarcerated in violation of the state constitution. 771 S.W.2d at 699–700; Tex. Const. art. I, § 10 (1984).

■ With respect to the assertion that the juvenile court violated section 36.-01(a)(1) and (2) of the Texas Code of Criminal Procedure when it failed to read the "indictment" to the jury and failed to allow for appellant's "plea of not guilty" before the jury,[4] the Texas Family Code states

---

**3.** Appellant received the same substantive and procedural rights as an adult defendant whose case was presented to a grand jury for indictment. Tex.Fam.Code Ann. § 53.045(b), (c), and (d) (Supp.1990); Dawson, *New Juvenile–Criminal System*, 19 St. Mary's L.J. at 976.

**4.** At the adjudication proceeding, the juvenile court read *and explained* the charging petition to appellant and asked appellant whether or not the allegations against him were true or not true. Appellant responded, "not true." The jury was then brought into the court for opening arguments.

that "[e]xcept when in conflict with a provision of this title, the Texas Rules of Civil Procedure govern proceedings under this title." Tex.Fam.Code Ann. § 51.17 (1986); *Brenan v. Court of Civil Appeals,* 444 S.W.2d 290, 292 (Tex.1969). Thus, the provisions of the Texas Code of Criminal Procedure generally do not apply. *Robinson v. State,* 707 S.W.2d 47, 48–49 (Tex.Cr.App. 1986). The Family Code states that "[a]n oral or written answer to the petition may be made at *or before* the commencement of the hearing. If there is no answer, a general denial of the alleged conduct is assumed." Tex.Fam.Code Ann. § 53.04(e) (1986) (emphasis added). Therefore, his contention lacks merit.

### "CRIMINAL PROSECUTION"

■ The thrust of appellant's argument under his first point of error is that he was "prosecuted as a criminal," and therefore, he was prosecuted in violation of section 54.02(g) of the Texas Family Code and subsections 8.07(b) and 8.07(c) of the Texas Penal Code. Section 54.02(g) provides:

> If the juvenile court retains jurisdiction, the child is not subject to criminal prosecution at any time for any offense alleged in the petition or for any offense within the knowledge of the juvenile court judge as evidenced by anything in the record of the proceedings.

Tex.Fam.Code Ann. § 54.02(g) (1986). Subsections 8.07(b) and 8.07(c) state:

> (b) Unless the juvenile court waives jurisdiction and certifies the individual for criminal prosecution, a person may not be prosecuted for or convicted of any offense committed before reaching 17 years of age except [exceptions not applicable here]. . . .

> (c) Unless the juvenile court waives jurisdiction and certifies the individual for criminal prosecution, a person who has been alleged in a petition for an adjudication hearing to have engaged in delinquent conduct or conduct indicating a need for supervision may not be prosecuted for or convicted of any offense alleged in the juvenile court petition or any offense within the knowledge of the

juvenile court judge as evidenced by anything in the record of the juvenile court proceedings.

Tex.Pen.Code Ann. §§ 8.07(b) and 8.07(c) (Supp.1990). The State responds that appellant's juvenile proceedings are civil proceedings, quasi-criminal in nature, and not criminal proceedings within the scope of sections 8.07(b) and 8.07(c) of the Penal Code and section 54.02(g) of the Family Code. We agree.

Appellant's first point hinges on several conjectural contingencies. Appellant argues that if, as section 53.045(d) of the Family Code provides, the petition is an indictment, then appellant's adjudication was a criminal prosecution under article I, section 10 of the Texas Constitution. In other words, because appellant was sentenced to the penitentiary pursuant to an "indictment," he must have been criminally prosecuted; and because he was criminally prosecuted pursuant to an "indictment," he was, therefore, subject to incarceration in the penitentiary. Appellant's theory is nothing more than circular reasoning and, thus, it is not persuasive.

Appellant also contends that he can only become eligible for parole if "he was convicted in a criminal case." As we discussed above, appellant can become eligible for parole because the legislature granted parole eligibility to persons transferred to the penitentiary from the Texas Youth Commission. Tex.Gov't Code Ann. § 498.053(c) (Pamp.1990). Further, appellant states, without citing authority, that the very fact that appellant is subject to parole conclusively establishes that he was subject to a criminal prosecution. *See Rayburn v. Giles,* 182 S.W.2d 9 (Tex.Civ.App.1944, writ ref'd) (argument not supported by authority is waived). In addition, appellant ignores the Family Code pronouncement that "[a]n order of adjudication . . . under this title *is not a conviction of a crime,* and does not impose any civil disability ordinarily resulting from a conviction or operate to disqualify the child in any civil service application or appointment." Tex.Fam.Code Ann. § 51.13(a) (1986) (emphasis added). Although appellant labels his adjudication a

"criminal prosecution," his categorization does not necessarily make it so. His adjudication, therefore, was not barred by section 8.07(b) of the Texas Penal Code. *See Robinson,* 707 S.W.2d at 48–49; *In re J.R.R.,* 696 S.W.2d 382, 383 (Tex.1985).

Finally, section 54.02(g) of the Family Code and section 8.07(c) of the Penal Code simply bar prosecutions *in addition* to appellant's juvenile adjudication with respect to the same alleged conduct, and therefore, these provisions have no bearing on the instant appeal. *See R.E.M. v. State,* 541 S.W.2d 841, 844 (Tex.Civ.App.1976, writ ref'd n.r.e.).

## INVOLUNTARY SERVITUDE/PEONAGE

In his fourth and fifth points, appellant claims that the determinate sentencing statute and penitentiary work requirements impose involuntary servitude and peonage on him in violation of the United States Constitution and the Anti-peonage Act, respectively. U.S. Const. amend. XIII, § 1; 42 U.S.C.A. § 1994 (1981). The thirteenth amendment to the United States Constitution provides:

> Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

The Anti-peonage Act states:

> The holding of any person to service or labor under the system known as peonage is abolished and forever prohibited in any Territory or State of the United States; and all acts, laws, resolutions, orders, regulations, or usages of any Territory or State, which have heretofore established, maintained, or enforced, or by virtue of which any attempt shall hereafter be made to establish, maintain, or enforce, directly or indirectly, the voluntary or involuntary service or labor of any persons as peons, in liquidation of any debt or obligation, or otherwise, are declared null and void.

Because the Anti-peonage Act is intended to implement the thirteenth amendment,

we will consider both points of error together. *Santiago v. City of Philadelphia,* 435 F.Supp. 136, 157 (E.D.Pa.1977).

Appellant bases his assertion on the authority of two cases: *King v. Carey,* 405 F.Supp. 41 (W.D.N.Y.1975), and *Santiago,* 435 F.Supp. at 136. In *King,* the district court simply denied a motion to dismiss an action by several juveniles who were civilly committed to several New York State youth camps and forced to work several hours per day. The court likened the juveniles to persons civilly committed to mental institutions who are protected by the thirteenth amendment. *King,* 405 F.Supp. at 44. The court explained that those persons civilly committed to mental institutions cannot be utilized in labor unrelated to therapeutic programs or the inmates' personal needs. *Id.* Thus, the court decided that the case could proceed to flesh out the allegations that the juveniles were forced to participate in "excessive" work programs. *Id.* We conclude that appellant's case is distinguishable from the rationale in *King* because appellant is now an adult incarcerated in the penitentiary, not a juvenile; and certainly, appellant cannot be likened to a person civilly committed to a mental institution.

*Santiago* was a similar action brought by confined juveniles. The district court in *Santiago* also denied defendants' motion to dismiss the juveniles' thirteenth amendment and peonage claims. 435 F.Supp. at 157. The court relied on the *King* rationale in reaching its decision to maintain the action. *Id.* Nonetheless, we appreciate the following wisdom espoused by the court in *Santiago:*

> Declaring that juveniles confined at [the youth center] are prisoners or civilly committed persons should not control the outcome of this constitutional claim. Rather, *the justification for confining juveniles should determine the appropriateness of work assignments for [youth center] residents.*

*Id.* (Emphasis added.)

Here, the justification for incarcerating appellant in the penitentiary is that a jury determined that as a juvenile with a history

of violence he committed murder with a deadly weapon. With this in mind, we note that the Georgia Court of Appeals held that a minor adjudicated as a delinquent because he ignited a school garbage can could constitutionally[5] be required to contribute 100 hours of free labor to the county parks department. *M.J.W. v. State*, 133 Ga.App. 350, 210 S.E.2d 842, 844 (1974). The court reasoned that "the quasi-criminal aspects of the juvenile law" bring the community service punishment within the "punishment for crime" exception to the involuntary servitude prohibition. *Id.;* U.S. Const. amend. XIII, § 1. The court buttressed this rationale by pointing out that the Georgia Juvenile Court Code defines a delinquent act as one "designated a crime by the laws of Georgia." *M.J.W.*, 210 S.E.2d at 844. Similarly, the Texas determinate sentencing statute's coverage is defined by six specific violent offenses prohibited by the Texas Penal Code.[6] Tex. Fam.Code Ann. § 53.045(a) (Supp.1990).

Citing *M.J.W.*, the Washington Court of Appeals held that the imposition of 50 hours of community service on a juvenile for automobile theft was not an imposition of involuntary servitude in violation of the thirteenth amendment. *In re Erickson*, 24 Wash.App. 808, 604 P.2d 513, 514 (1979). The court reasoned that because the Washington Juvenile Justice Act "places emphasis on accountability of juveniles for *criminal behavior*," the juvenile disposition order did constitute "punishment for crime." *Id.;* U.S. Const. amend. XIII, § 1. The Washington Juvenile Justice Act also defines a juvenile offense as "an act which would constitute a crime if it was committed by an adult." *Erickson*, 24 Wash.App. 808, 604 P.2d at 514. In addition, the court pointed out that juveniles are afforded many of the same due process rights that are provided to adult criminal defendants. *Id.* The Texas determinate sentencing

statute similarly provides the citizens of Texas with a procedure for responding to violent offenses committed by juveniles. In addition, the procedures in the Texas Family Code provide appellant with many of the same due process rights that are afforded to adult criminal defendants in Texas. Dawson, *The New Juvenile–Criminal System*, 19 St. Mary's L.J. at 943, 946, 985–1009.

With the common sense analysis of *M.J.W.* and *Erickson* as our guide, and because we conclude that the work requirement imposed on appellant[7] is an appropriate punishment for a juvenile who committed murder, we hold that the determinate sentencing statute does not impose involuntary servitude or peonage on him in violation of the thirteenth amendment of the United States Constitution or section 1994 of title 42 of the United States Code, respectively. *See Santiago*, 435 F.Supp. at 157.

## PROOF OF AGE

■ In points six, seven, eight, and nine, appellant contends that there is no evidence to prove that he was between the ages of 10 and 17 at the time of the delinquent conduct; and that he was denied his right to trial by jury, his right to be confronted with witnesses, and his privilege against self-incrimination with respect to the fact issue. Essentially, appellant complains that the trial court asked him to identify himself by name and age as reflected in the charging petition before he was warned that he had the rights enumerated above. In effect, appellant asserts that the court tricked him in to admitting the jurisdictional fact of age before he was apprised of his rights.[8] The State contends that there is sufficient evidence in the record that appellant was between the ages of 10 and 17 at the time of the alleged conduct. We agree.

---

5. The court held that there was no thirteenth amendment violation.

6. The Texas Family Code defines delinquent conduct as conduct that violates the Texas penal laws and that is punishable by incarceration. Tex.Fam.Code Ann. § 51.03(a) (Supp.1990).

7. Appellant is now an adult incarcerated in the penitentiary, and he was not transferred to the penitentiary until after he reached the age of majority.

8. This exchange did not occur in the jury's presence.

Appellant gave the Austin Police Department a written confession with regard to the murder alleged in the petition. This confession contained an admission by appellant of his age which was within the required jurisdictional age for adjudication by the juvenile court. This confession was admitted into evidence without objection. In addition, appellant's attorney entered into a stipulation on the record before the jury as to appellant's age at the close of the State's case. Thus, the record is clear that sufficient evidence supports appellant's age as having been between the ages of 10 and 17 at the time of the alleged conduct. *In re S.E.C.*, 605 S.W.2d 955, 958 (Tex.Civ.App.1980, no writ).

Because the record clearly establishes that the State met its burden on the jurisdictional issue of appellant's age notwithstanding appellant's admission at the beginning of the adjudication proceeding, any error which might have stemmed from his contention that he was denied his right to trial by jury, his right to be confronted with witnesses, and his privilege against self-incrimination with regard to the issue of his age is harmless. *See* Tex.R.App.P. Ann. 81(b) (Pamp.1990).

## APPELLANT PREVIOUSLY REPRE-
## SENTED BY ASSISTANT
## DISTRICT ATTORNEY

■ In points twelve, thirteen, and fourteen, appellant claims that he was denied due process of law and due course of law under the United States and Texas Constitutions, respectively, because the prosecuting attorney had represented him earlier in a "substantially related matter." U.S. Const. amend. XIV, § 1; Tex. Const. art. I, § 19 (1984); Tex.Code Cr.P.Ann. art. 2.01 (Supp.1990).[9] One of the assistant district attorneys in the case now before this Court represented appellant in 1985 at the final of four detention hearings held pursuant to a petition that alleged that he had

violated an earlier probation and engaged in delinquent conduct.

A detention hearing is warranted when a juvenile is taken into custody and not released under section 53.02 of the Texas Family Code. Tex.Fam.Code Ann. § 54.01(a) (1986). After the hearing, the court shall order the child released unless it finds that one or more of several factors exist. Tex.Fam.Code Ann. § 54.01(e) (1986).

The offense alleged in the petition involved a stabbing incident on February 17, 1985. Appellant was represented by Bill King at the first three detention hearings and at the subsequent dispositional hearing, where the juvenile court referee recommended that appellant be committed to the control of the Texas Youth Commission.[10] This recommendation was approved and ordered by the district court on March 21, 1985.

At the disposition hearing now being challenged by appellant, the prosecutor used the stabbing incident during her presentation for the purpose of bolstering her request that appellant be punished by eventual transfer to the penitentiary:

### DIRECT EXAMINATION

\* \* \* \* \* \*

Prosecutor: Ms. Hernandez, do you know of [appellant's] reputation in the community for peacefulness and law abiding behavior? Are you aware of his reputation?

A: I'm aware of his reputation, yes.

Q: Is that reputation good or bad?

A: Bad.

### CROSS–EXAMINATION

Defense Counsel: Ms. Hernandez, on what date was [appellant] placed on probation?

\* \* \* \* \* \*

9. Although relied on by appellant, the Texas Code of Criminal Procedure does not apply to the prosecuting attorney's conduct in the case before this Court. Tex.Fam.Code Ann. § 51.17 (1986).

10. Bill King also represented appellant at the certification, adjudication, and disposition hearings now on appeal before this Court.

Q: At a later date he violated that probation. Is that correct?

A: Correct.

Q: And he violated that probation by getting into a fight with another juvenile. Is that correct?

A: Partly, yes.

\* \* \* \* \* \*

REDIRECT EXAMINATION

Prosecutor: Ms. Hernandez, when [appellant] violated his probation, the offense was assault. Is that correct?

A: That is correct.

Q: I'll pass the witness, your honor.

The 1985 assault was not discussed or alluded to at any other time during the adjudication or disposition hearings now before this Court. In addition, the State did not inquire into any of the details of the 1985 assault.

With respect to appellant's preservation of error, he waived error because he did not object to the prosecutor's participation either before (through a motion to disqualify) or during the adjudication process. *Turner v. Turner,* 385 S.W.2d 230, 236 (Tex.1964). Further, appellant cannot claim that he was not aware of any potential error; appellant knew that the prosecutor previously had represented him, although he may have forgotten.

Even if the alleged error had been properly preserved, we conclude that reversible error was not committed by the State. In *Munguia v. State,* 603 S.W.2d 876, 878–79 (Tex.Cr.App.1980), the Court of Criminal Appeals held that a prosecutor was not disqualified from assisting in the prosecution of a rape case although, before his appointment as county attorney, he had represented defendant on a prior rape charge which was dismissed. The Court of Criminal Appeals reasoned that although defendant had told him about all details of the prior offense as well as defendant's prior criminal record there was absolutely no discussion of the facts of the later case between the two. *Id.* Even though *Munguia* is a criminal case, we find it to be persuasive.

Although *Munguia* and the case before us differ in that here the earlier assault was introduced in the disposition stage of the later case, the information—that appellant had engaged in an assault in 1985—already was known by the State because the information became a permanent part of appellant's Travis County juvenile record. In addition, no details of the assault were discussed at appellant's disposition hearing as recounted above. Finally, several Austin police officers testified during the disposition hearing that appellant's reputation for peacefulness was "bad." The record indicates that their knowledge came to them as a result of their work within appellant's community, not from the prosecutor's prior representation of appellant. Thus, her prior representation of appellant in the 1985 detention hearing had no impact on his 1988 adjudication and disposition for murder.

Assuming that the civil standard for the determination of a conflict of interest—whether a substantial relationship can be shown between the subject matter of a former representation by the attorney and a subsequent adverse relationship—controls the potential merits of appellant's claim, we conclude that no error was committed by the State. *National W. Life Ins. Co. v. Jones,* 670 S.W.2d 752, 754 (Tex.App. 1984, no writ). As discussed above, the prosecutor simply represented appellant in one detention hearing that had a very narrow purpose. *See* Tex.Fam.Code Ann. § 54.01 (1986). This hearing related to an assault that is unrelated to the murder underlying appellant's adjudication now on appeal before this Court. In light of these factors and our view of *Munguia* above as it relates to the instant case, we conclude that the 1985 detention hearing is not substantially related to appellant's case before this Court. We must also conclude, therefore, that the prosecutor was not disqualified from participating in appellant's adjudication and disposition for murder. Even if we had concluded that the State committed technical error, we also would have concluded that the error was not harmful for the reasons stated above under both the civil and criminal harmful error stan-

dards. *See* Tex.R.App.P.Ann. 81(b)(1) and (2) (Pamp.1990).

We overrule all of appellant's points of error. We affirm the judgment of the district court with respect to the adjudication and disposition of appellant, and we affirm the order of the district court transferring appellant to the Texas Department of Criminal Justice, formerly the Texas Department of Corrections.

ABOUSSIE, Justice, concurring.

I concur in the Court's opinion and result because none of the creative complaints lodged by the appellant constitute reversible error.

The Legislature enacted the "determinate sentencing" statute in an effort to address the admittedly frustrating and difficult problem of dealing with the violent juvenile offender. The statute may be employed in deciding the proper disposition of those juveniles who commit the most serious offenses against other persons. Tex. Fam.Code Ann. § 53.045 (Supp.1990). The potential violence involved in this conduct cannot be underestimated, and the seriousness of the offenses involved should not be minimized.

Nevertheless, under the statute, even a ten-year-old child who engages in certain delinquent conduct may be committed to the Texas Youth Commission and transferred to the Texas Department of Criminal Justice for a total of thirty years. By this plan, the State necessarily pledges to commit substantial financial resources for incarceration rather than rehabilitation. To an extent, the law concedes that a child's course of life can be irreversibly determined at this early age, acknowledges the futility of efforts to redirect that course, even though the child remains under the State's care and control, and emphasizes the need to punish undesirable conduct.

One purpose of Title 3 of the Texas Family Code is, of course, the protection of the community. In addition, however, its stated purpose is the protection and care of children and the removal of the taint of criminality from the juvenile offender, substituting treatment, training, and rehabilitation for punishment. Tex.Fam.Code Ann. § 51.01 (1986).

In our role as an appellate court, we are not called upon to question the wisdom of the Legislature's decision in matters of policy or to evaluate the merits of the system it selects. Even so, we may trust that the State will invest its financial resources in human potential through programs of prevention and treatment for our youth, thereby encouraging and enabling even those juveniles who deviate from acceptable behavior eventually to lead productive lives as contributing members of their communities.