745 S.W.2d 353 (1988)
Albert Roy SANCHEZ, Appellant,
v.
The STATE of Texas, Appellee.
No. 744-85.
Court of Criminal Appeals of Texas, En Banc.
January 27, 1988.
*354 William R. Bowden, Jr., Odessa, for appellant.
Al W. Schorre, Dist. Atty. and Wayne Frost, Asst. Dist. Atty., Midland, Robert Huttash, State's Atty., Austin, for State.
Before the court en banc.

OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
TEAGUE, Judge.
The record reflects that Albert Roy Sanchez, hereinafter appellant, was found guilty by a jury of committing the offense of attempted capital murder of Arlene Mullin pursuant to the following "application paragraph" of the trial judge's charge to the jury:
Now, if you find from the evidence beyond a reasonable doubt that on or about the 6th day of October, 1983, in Midland County, Texas, the defendant, ALBERT ROY SANCHEZ, did then and there intentionally or knowingly, with the specific intent to cause the death of Arlene Mullin, do an act, to-wit: stab the said Arlene Mullin with a knife, and that the defendant was then and there in the course of kidnapping the said Arlene Mullin, and that said act of stabbing amounted to more than mere preparation and tended but failed to cause the death of Arlene Mullin, then you will find the defendant guilty of attempted capital murder.[1]
An individual commits the offense of capital murder if he intentionally causes the death of an individual in the course of committing or attempting to commit the offense of kidnapping. V.T.C.A., Penal Code, § 19.03(a)(2). An individual commits the offense of attempted capital murder if, with specific intent to commit the offense of murder, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense of murder, and this occurs in the *355 course of committing or attempting to commit one of the enumerated offenses listed in Sec. 19.03(a), supra. Also see V.T. C.A., Penal Code, § 15.01(a), which defines criminal attempt.
The Eighth Court of Appeals (El Paso) affirmed the trial court's judgment and sentence. In doing so, it rejected appellant's contention that the trial judge erred in refusing to instruct the jury on the lesser offense of aggravated assault, after finding that the issue was not raised by the evidence and that appellant's own testimony negated evidence of aggravated assault. See Sanchez v. State, 691 S.W.2d 797 (Tex. App.-8th 1985).
We granted appellant's petition for discretionary review in order to make the determination whether the court of appeals correctly decided appellant's contention. We find that it did not and will reverse its judgment.
Notwithstanding the rule that in deciding whether appellant was entitled to an instruction on the lesser offense of aggravated assault only the evidence favorable to this issue should be considered, we will highlight the more salient facts of this cause, both favorable and unfavorable. We also point out that we find that the facts that led to the stabbing of the complainant by appellant and the subsequent events are bizarre.
The victim, Arlene Mullin, was the mother of appellant's financee, Cindy Nelson, who was only 16 years of age at the time in question. Appellant, who was from California and had come to live with his grandmother in Midland, because of "truancy" problems that he suffered in California, was only 18 years of age at the time in question. His stay in Midland was marred by the fact that he was found guilty of committing the offense of burglary of a restaurant, the Broken Spoke, where he had worked as a busboy.[2] Mullin posted bail for appellant for the burglary offense. After he was released from jail, appellant lived with Mullin and her husband for approximately three months. Appellant worked for Mullin's husband. Appellant had also worked with the victim at the Broken Spoke where she introduced appellant to her daughter, Cindy Nelson, a daughter from a prior marriage.
Mullin testified that she liked appellant "very much" and wanted her daughter to marry him because she "thought he was a very nice clean-cut boy," but believed that her daughter was then too young to get married, and told both appellant and her daughter that she thought it best for them to wait until Cindy turned 18 years of age. Mullin's objection to her daughter marrying appellant apparently caused an argument between her daughter, Cindy, appellant, and herself. When appellant assaulted Mullin, Cindy had previously moved to California to live with her natural father. At the time appellant committed the offense he had made plans to move back to California where he intended to get back with Cindy and marry her.
Mullin testified that at the time she was assaulted by appellant she had reconciled herself to the fact that her daughter and appellant were going to get married in California, but apparently did not inform appellant or Cindy of her change of heart. Cindy did not testify at appellant's trial because her natural father, with whom she was living in California, refused to permit her to come to Texas.
Because we find that appellant's confession, the validity of which is not before this Court for review, in addition to what we have already stated, sufficiently details what happened to Mullin on the day in question, we attach same to this opinion as "Appendix A".
When appellant testified at his trial, he was unable to articulate a reason why he assaulted Mullin. He testified that when he stabbed Mullin he did not intend to cause her serious bodily injury; did not intend to hurt her in any way; that he "thought if I showed the knife to [Mullin, she] would talk with me, she would listen *356 to me [and understand why Cindy was not too young to marry him]"; that what he did was a spur of the moment thing; that he did not want to harm Mullin in any way; that he merely wanted to get her alone so that he could talk with her; that after he stabbed her he did not want to leave her at the location where he stabbed her; that he was then afraid; that he did not know that Mullin was then "hurt bad"; that he did not want her to die; that he did not seek other assistance because he "wanted to see if I could help her myself"; that he attempted to make her comfortable; that he eventually decided to take Mullin to the hospital, which he did; and that he still loved Mullin and her daughter.
The record reflects that the jury deliberated for approximately 2½ hours before finding appellant guilty. At one point in time, the jury requested the trial judge to furnish it with the written statement of Mullin, but because same had not been admitted into evidence the trial judge denied the request.
In rejecting appellant's contention that he was entitled to an instruction to the jury on the offense of aggravated assault, the court of appeals concluded that appellant's testimony that related to when he stabbed Mullin "amounted to a general denial of guilt and did not raise the issue of a less damaging intent." We disagree.
We find that appellant's testimony clearly reflects or indicates that although he admitted taking Mullin to an isolated field and stabbing her there he only stabbed her once with a butcher knife, even though there was unlimited opportunity to inflict more wounds. While appellant delayed in arranging to get Mullin to a hospital, he eventually did so. Appellant did not leave her to die, testifying that he wanted to see if he could help her or that she could help herself. The treating physician also testified that appellant was the only person who could have saved Mullin; that if she had tried to walk and seek help on her own, the effect of such movement on her body would have resulted in death. We find that a jury could find, but would not be required to find, from the favorable admitted evidence that appellant was only guilty of committing the offense of aggravated assault of Mullin. The jury here, however, was never given the opportunity to make that finding.
One of the ways that an individual may commit the offense of aggravated assault is if he commits an assault and causes serious bodily injury to another individual. See V.T.C.A., Penal Code, § 22.02(a)(1). One of the ways that a person may commit the offense of assault is if he intentionally, knowingly, or recklessly causes bodily injury to another individual. See V.T.C.A., Penal Code, § 22.01(a)(1). Appellant does not claim that the injury that Mullin suffered was not a "serious bodily injury", as that term is defined in our law. See V.T.C.A., Penal Code, § 1.07(a)(34) ("`Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of the bodily member or organ").
In Ruiz v. State, 523 S.W.2d 691, 695 (Tex.Cr.App.1975), this Court held:
In prosecutions for assault with intent to murder, [which is the predecessor to the present offense of attempted murder], unlike prosecutions for murder, if the defendant testifies he did not intend to kill the victim even though the weapon used is a deadly weapon per se used in a deadly manner it is necessary to charge the jury on specific intent to kill and on aggravated assault if there is a proper request for these charges.
Given the fact that under our law a knife is not per se a deadly weapon, what this Court stated in Ruiz, supra, strongly supports appellant's contention that he was entitled to an instruction on the lesser offense of aggravated assault.
Appellant asserts that the favorable testimony adduced at his trial reflects or indicates that when he stabbed Mullin he did not have the specific intent to cause her death. The court of appeals concluded that the favorable testimony "amounted [only] to a general denial of guilt and did not raise the issue of a less damaging intent." We disagree with the court of appeals.
*357 It is now axiomatic that "if evidence from any source raises the issue of a lesser included offense ..., it must be included in the court's charge. (Citations omitted) ... It is then the jury's duty, under proper instructions, to determine whether the evidence is credible and supports ... the lesser included offense." Marquez v. State, 725 S.W.2d 217, 223 (Tex.Cr.App.1987). "[T]his is true regardless of whether such evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of this evidence. (Citations omitted.) Further, it is not the [trial] court's function to determine the credibility or weight to be given the evidence raising ... [a] lesser included offense. The fact that the evidence raising the issue may conflict with or contradict other evidence in the case is not relevant to the determination of whether a charge on the issue must be given. Rather, it is the jury's duty, under proper instruction, to determine whether the evidence is credible and supports the lesser included offense. Moore v. State, 574 S.W.2d 122 (Tex. Cr.App.1978)." Hayes v. State, 728 S.W.2d 804, 807 (Tex.Cr.App.1987). "The necessity of a charge on a lesser included offense must, of course, be determined on a case by case basis ... In determining this question all of the evidence at trial, whether produced by the State or the defendant must be considered. If evidence from any source raises the issue [whether a lesser included offense instruction should be given] and a jury charge on the issue is properly requested, the issue must be submitted to the jury. Lugo v. State, [667 S.W.2d 144 (Tex. Cr.App.1984)]." Moreno v. State, 702 S.W.2d 636, 640 (Tex.Cr.App.1986). Cf. Wallace v. State, 679 S.W.2d 1, 3 (Tex.Cr. App.1983).
Therefore, a charge on a lesser offense is required when the lesser offense is included within the proof necessary to establish the offense charged, see Art. 37.09(1), V.A.C.C.P., and there is some admitted evidence in the record that if the accused is guilty he is guilty of the lesser offense. See Aguilar v. State, 682 S.W.2d 556 (Tex.Cr.App.1985); Royster v. State, 622 S.W.2d 442 (Tex.Cr.App.1981) (Opinion on rehearing). Aggravated assault may be a lesser included offense of attempted capital murder. Godsey v. State, 719 S.W.2d 578 (Tex.Cr.App.1986).
In determining whether appellant was entitled to an instruction on the lesser offense of aggravated assault we focus our attention on whether some admitted evidence exists in this record that might support the finding by a jury that when appellant stabbed Mullin he only intended to injure her and did not intend to cause her death, which would cause him to be guilty of the offense of aggravated assault and not attempted capital murder. We find that such evidence exists. See the summary of the evidence ante, which we will not repeat.
As earlier noted, the court of appeals held that appellant's testimony negated the lesser intent, and that evidence of the lesser offense of aggravated assault was not raised by any other evidence. However, this Court has expressly disapproved the notion that a defendant's testimony can negate evidence which raises the issue of a lesser included offense. See Lugo v. State, supra, at 147. The jury in this cause should have been, but was not, left free to accept all or any part of appellant's testimony that might have negated the mental state for committing the offense of attempted murder. See Lugo v. State, supra; Thompson v. State, 521 S.W.2d 621 (Tex.Cr.App.1974). Moreover, a review of the admitted favorable evidence on this issue does not support the court of appeals' conclusion that the issue of the lesser offense of aggravated assault was not raised by any evidence. We find that a rational trier of fact could have found from the admitted evidence, but was not required to so find, that when appellant stabbed Mullin he did not intend to cause her death, but instead only intended to injure her.
In this instance, we find that the evidence raised the issue of aggravated assault to the degree that a jury could have found appellant guilty of that offense and not guilty of the charged offense of attempted capital murder. We hold that it *358 was error for the trial judge to have refused appellant's requested charge on aggravated assault.
Accordingly, the judgment of the court of appeals is reversed and the cause remanded to the trial court for proceedings not inconsistent with this opinion.
DUNCAN, J., concurs in the result.
*359
 of the accusation against me and the affidavit, if any, filed in support of such accusation; that I have a right to retain
 counsel; that if I am unable to obtain counsel that I can request the appointment of counsel; that I have the
 right to have an attorney present during any interview with peace officers or attorneys representing the State; that
 I have the right to terminate this interview at any time; that I have the right to an examing trial; that I shall be
 allowed reasonable time and opportunity to consult counsel; that I have the right to remain silent; and that I do
 not have to make any statement at all and that any statement I do make may be used against me; and ___________
 Sergeant David Garcia the person to whom this statement is made, also warned me that
 (Officer Taking Statement)
 I do not have to make any statement at all; that I have the right to remain silent; that I have the right to retain
 counsel and that if I am unable to obtain counsel that I can request the appointment of counsel prior to or during
 any questioning; that I have the right to have an attorney present prior to and during any interview with peace
 officers or attorneys representing the State; that I can terminate this interview at any time; that I have the right
 to an examining trial; and that any statement made by me may be used in evidence against me in the trial or trials
 of the offense or offenses concerning which this statement is made; and I hereby declare that I understand the foregoing
 and do hereby expressly waive any and all of such rights; and I do hereby make the following voluntary
 statement:
My name is Albert Roy Sanchez. I am a Mexican male, 18 years of
age. I live at 1520 South Terrell Street in Midland County, Texas with my
Grandmother, Thome Subia and my cousin, Janet Flores. I was born in Houston,
Texas on 1/18/65. I am currently unemployed. I am making this statement at
the request of Sergeant David Garcia of the Midland County Sheriff's Department
in reference to an aggravated assault and aggravated kidnapping. At approximate
11:00 A. M. 10/6/83, I went to my Grandmother's house (1502 South Terrell)
to get my birth certificate and while I was there I got a knife from the kitche
The knife was approximately 10 inches total length and had a wooden handle. I
placed the knife inside my sock concealed by my pants. I got the knife because
I was planning on talking to Arleen Mullin (My girlfriend's Mother). I though
I might meed the knife to scare her in case she wanted to leave because I knew
I was going to be firm and forward in my part of the conversation with her. I
walked from my Grandmother's house to Arleen Mullin's house. (approximately
3 miles). The house is located off the Rankin Highway. I arrived at Arleen's
house at about a quarter till twelve noon. A friend of Arleen's named Cheryl was
at Arleen's house so I waited approximately 10 minutes for Cheryl to leave. I
then went up to the door and Arleen asked me in. We talked for a while. Another
friend of Arleen's named Bess, came over around two o'clock. Arleen and I talke
to Bess, for awhile. Bess left at about ten minutes after three P. M. Arleen,
told Bess, well I guess take Albert to go see his Pinto (a car I was thinking
of buying.) Arleen got ready and we left at approximately 3:30 P.M. Arleen;
was driving her Chevrolet pickup. We drove from Rankin Highway to Florida
Street to Cloverdale Road, pass Fairgrounds Road. About a half mile past
Fairgrounds, I told Arleen we had passed it, meaning the location of the car.
Arleen pulled over to the shoulder of the road and switched places. I was now
driving. I gave Arleen, a blindfold I had with me and told her to put it
because I wanted to surprise her. Arleen, put on the blindfold as I was making
a U turn. I drove a few feet and turned right into a dirt road which went
behind some tall weeds and bushes. I drove to where the fence to the oil tanks
was. We got out of the pickup and I walked Arleen through some bushes and weed
to a path near the chain link fence. We walked next to an old tin building.
We stopped and paused for awhile. (I had the knife in my back pocket) As
I pulled the blind fold partially off with my left hand, I stabbed Arleen
Mullin with the knife in my right hand. I stabbed Arleen Mullin, once in the
back and then I dropped the knife and ran off through the bushes and weeds to
the pickup. I got into the pickup which was left running. I looked up and saw
Arleen Mullin walk out of the bushes. I drove forward a little and Arleen
stopped. I turned off the pickup and Arleen, looked scared and said something,
I remember she said " she loved me". I got out of the pickup and Arleen
walked over and said something to the effect that she needed a doctor. I told
her I couldn't take her to the hospital, she said something about her doctor
*360
and I said I'll try to bring him out but I can't take you to town. Once or
twice she told me to take the pickup and run and leave her there to die but
to leave her purse. Arleen Mullin sat down and during our conversation she
stated that she knew I was going to hurt her, and I said how could you know
when I didn't even know, but I guess she could tell because I acted real
nervous before stabbing her. We stayed at that location for about an hour.
Arleen wanted me to take her to a Simms residence where her husband Jerry and
I had done some swimming pool work. The pickup doesn't start unless someone
gets underneath with a screwdriver and fools around with the starter while
someone sits behind the wheel and turns the key. I got underneath the pickup
and Arleen got behind the wheel. I heard the pickup start to crankup so I got
out from underneath and at that time Arleen started the pickup and started
forward. I thought she was trying to head for the highway so I reached over
and turned off the pickup. Arleen sat there for a second then layed down. I got
behind the wheel for a while trying to think of what I was going to do next. I
reached over and turned the key and the pickup started so I drove towards
Greenwood looking for a place back away from the road like a house, or abandon
shack. I drove past the Greenwood school and turned right just past the church
and we drove south. I finally spotted a road off the main road and turned right
(west) and drove down a dirt road to where it was a Y intersection and again
I turned right (north) and I found a hidden area near an oil pump (pump
jack). I stopped the pickup and Arleen got out and layed down next to the
pickup in the open area. I got a sheet out of the pickup and spread it out
in a shaded area and told Arleen to lay down in the shade. She (Arleen) was
afraid I was going to leave her to die, because she would ask me not to
leave her to die. The pickup was running out of gas so I left Arleen there and
I went to the store in Greenwood and put two (2 (dollars worth of gas in
the pickup and I went back to where I had left Arleen. I shut off the truck and
*361
and stayed with Arleene for awhile (approximately 20 to 30 minutes) Arleene
and I exchanged small talk. I told Arllene that I was going to Midland to get
the change out of my car which was at 1520 South Terrell. At first Arleene told
me to try to cash a check. I wrote two checks and no one would cash them
because I didn't have a driver's license. I went to several different stores,
then I went to 1520 South Terrell to get the change out of my car. I then
stopped at the Kent station on Florida Street and put four (4) dollars
worth of gas in the pickup and went back to where Arllene was. I was gone about
an hour and a half, running out of gas and trying to cash checks took most of
the hour and a half. Arleene and I tried to come up with a plan to try to keep
me out of trouble. One of the plans included her friend Bess, but I never
called her. I finally made up my mind that I was going to take Arleene to a
hospital. When I got back to where I had left Arleene. I talked with Arleene for
awhile and explained why I had taken so long, she asked me to take her to the
hospital and came up with some stories as to how she got stabbed and keep me
out of trouble. We talked a few minutes then I helped her in the pickup. We
drove to Midland but we ran out of gas at the I20 underpass. I got out and
flagged down a passing motorist headed towards Greenwood. The driver made a U
turn and came back to where Arleene and I were. I told the driver a white male
that I ran out of gas and that Arleene had a stab wound. We couldn't make up
our minds whether to get gas for the pickup or call an ambulance or have the
guy with the ride take us to the hospital, finally Arleene got out of the
pickup into the rides pickup and we all went to the hospital. A policeman gave
us an escort from Illinois to the hospital. When I was asked by the Sheriff's
deputies what had happened I told them that Arllne had dropped me off at a
motel and later called me to find her because she had been stabbed. I further
told the deputies that I called for a taxi to take me to Greenwood where I
finally located the pickup and later Arleene and about running out of gas on the
*362
way to Midland. I was just trying to buy a little time. I also after being
warned of my rights by both Sergeant Garcia and Judge Pine showed deputies
where all the locations of this incident occurred. This is all I know. It
is true and correct to the best of my knowledge. It all happened in the
County of Midland, Texas. I have not been threatened or promised anything to
cause me to make this statement. I do read, write, and understand the English
language.///////////////////////END OF STATEMENT/////////////////////////
*363 WHITE, Judge, dissenting.
The instant case involves a trial for attempted capital murder in which the appellant took the stand and testified that he did not intend to harm the victim of this offense. The majority has decided that this testimony raises the issue of the lesser included offense of aggravated assault, and that the appellant was entitled to an instruction to the jury on that lesser included offense. The majority relies on Godsey v. State, 719 S.W.2d 578 (Tex.Cr.App.1986), and reverses the judgment of the Court of Appeals.
I would hold that the evidence failed to establish that if the appellant was guilty, he was guilty of only the lesser included offense of aggravated assault. I believe the Court of Appeals correctly decided that the trial court's refusal to grant the appellant's requested instruction was proper.
A charge on a lesser included offense is required when the evidence meets the two-step test of Royster-Aguilar.[1] The first step of the test is that the lesser included offense must be included in the proof necessary to establish the alleged offense.
The second step of the test is that there must be some evidence that, if the appellant is guilty, he is guilty only of the lesser included offense. Royster, supra, at 446. All the evidence presented at trial is considered in order to determine whether an instruction on a lesser included offense should have been given. Lugo v. State, 667 S.W.2d 144, 147 (Tex.Cr.App.1984). Moreover, all testimony must be considered "in the context of the facts." It is improper to pluck any testimony out of the record and examine it in a vacuum. Godsey, supra, at 584.
However, this is what the majority has done in the instant case. Relying on the isolated facts that appellant failed to repeatedly stab the victim, that he failed to completely abandon her in an open field to die, that he failed to deny her medical treatment, and that the victim had only the appellant available to help her, the majority concludes that "when appellant stabbed Mullin he only intended to injure her and did not intend to cause her death."
The facts at trial also revealed the appellant's ruse to kidnap his victim and his continued actions to restrain her freedom and liberty. When he took the stand in his own defense, the appellant admitted to these actions in kidnapping the victim. He only denied any intention to harm the victim. The testimony was as follows:
"Q. Albert [appellant], did you stab Arlene [the victim]?
"A. Yes.
"Q. Did you intend to cause her serious bodily injury when you did stab her?
"A. I didn't mean to.
"Q. Did you want to hurt her in any way?
"A. No.
"Q. Can you tell the ladies and gentlemen of the jury why you did stab her?
"A. I don't know why I stabbed her.
* * * * * *
"Q. Did you think Arlene was severely hurt, hurt just a little, what did you think?
"A. I didn't know she was hurt bad."
Considering all of the evidence at trial, the issue of aggravated assault was not raised.
The elements of aggravated assault applicable to this case are (1) a person (2) intentionally, knowingly, or recklessly (3) commits an assault, which (4) causes serious bodily injury. Rocha v. State, 648 S.W.2d 298, 301 (Tex.Cr.App.1982) (opinion on rehearing); V.T.C.A., Penal Code Sec. 22.02. For a charge on aggravated assault to have been required in this case, there must have been some evidence either that appellant acted with the intent to cause serious bodily injury rather than the intent to cause death or that appellant acted only recklessly.
The Court of Appeals correctly reasoned that the evidence did not show an intent to do the lesser harm of serious bodily injury. Appellant clearly indicated he did not intend *364 to cause serious bodily injury nor even harm her "in any way." Accordingly, the evidence does not support a charge that appellant committed aggravated assault by intentionally or knowingly causing serious bodily injury.
Appellant's primary argument before the Court of Appeals and this Court relates to the culpable mental state of recklessness. As indicated above, aggravated assault can be committed recklessly. Section 6.03(c) of the Penal Code provides:
"(c) A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." (emphasis added).
Appellant argues that he was automatically entitled to a charge on aggravated assault (recklessness), because he denied acting intentionally.
The Royster-Aguilar test does not permit such a conclusion. There must be some evidence that appellant is guilty of the lesser included offense. Appellant is not able to point to any evidence that shows a conscious disregard of a risk. There is, for example, no evidence of a scuffle or the victim grabbing at the weapon nor evidence of appellant swinging the knife to keep the victim away. See, e.g., Thomas v. State, 669 S.W.2d 845 (Tex.Cr. App.1985); Mendieta v. State, 706 S.W.2d 651 (Tex.Cr.App.1986). The appellant was not entitled to the requested instruction.
I respectfully dissent.
ONION, P.J., and W.C. DAVIS and McCORMICK, JJ., join this dissent.
NOTES
[1] The jury also assessed appellant's punishment at twenty (20) years' confinement in the Department of Corrections.
[2] Appellant was placed on adult probation for five years. As a result of his trial and conviction in this cause, the trial judge revoked his probation. The validity of that conviction is not implicated in this cause.
[1] Royster v. State, 622 S.W.2d 442, 446 (Tex.Cr. App.1981) (opinion on rehearing); Aguilar v. State, 682 S.W.2d 556, 558 (Tex.Cr.App.1985).