In the Matter of S.D.W., a Juvenile.

No. 01–89–00238–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 20, 1991.

William Vance, Bryan, for appellant.

Bill R. Turner, Brazos Co. Dist. Atty., William O. Juvrud, Brazos Co. Asst. Dist. Atty., for appellee.

Before COHEN, PRICE and WILSON, JJ.

## OPINION

WILSON, Justice.

This is an appeal from a final judgment of the County Court at Law No. 1 of Bra-

zos County, Texas, sitting as a juvenile court, based on a jury finding that appellant, S.D.W., engaged in delinquent conduct by committing the offenses of murder and aggravated robbery. The jury assessed a determinative sentence of nine years confinement on the murder charge.[1] TEX.FAM.CODE ANN. § 54.04(d)(3) (Vernon Supp.1991). For the robbery,[2] the judge sentenced appellant to an indeterminate period, not to exceed the time when appellant attains the age of 21. TEX.FAM.CODE ANN. § 54.04(d)(2) (Vernon Supp.1991). We affirm in part, and reverse and remand in part.

On October 1, 1988, Michael Granados Ramirez was found by some passersby lying in a Bryan street. He was badly beaten about the face and head. The police and an ambulance were summoned, but Ramirez, a recently "green-carded" Mexican national, refused medical attention, and generally refused to cooperate in the immediate investigation of the crime. He told one of the passersby, Betty Perez, that he had been attacked by five black males, one of whom was on a bicycle. After Ramirez declined to be taken to a hospital, Ms. Perez took him home, where he was found dead the next day of a subdural brain hemorrhage.

In summary, we reverse the nine year determinative sentence because of the State's failure to comply with TEX.FAM. CODE ANN. § 53.045(d) (Vernon Supp.1991), in that, the record does not contain any writing, whether titled "certificate of approval" or otherwise, indicating the State's prosecution of appellant under the second amended petition, or any petition, was affirmatively approved by a grand jury. We affirm imposition of the indeterminate sentence for the delinquent conduct finding based on the aggravated robbery allegation, and remand the delinquent conduct finding on the murder allegation for imposition of an indeterminate sentence.

In the first and second points of error, appellant asserts the determinate sentencing provisions of the family code are unconstitutional. Our resolution of the fifth point of error renders these points of error moot. They are accordingly not discussed, *but see generally In the Matter of R.L.H.*, 771 S.W.2d 697, 699–700 (Tex.App.—Austin 1989, no writ), and *In the Matter of S.C.*, 790 S.W.2d 766, 769 (Tex.App.—Austin 1990, writ denied).

Appellant's third and fourth points of error state that the trial court's judgment and the commitment order are void because there is a fatal variance between the judgment and commitment order, and the relief sought in the second amended petition. We generally understand appellant to be complaining about the lack of specificity as to dispositional alternatives in the State's pleading.

Because we reverse the determinative sentence on other grounds, it is unnecessary to discuss whether the State's pleading gives appellant notice, consistent with due process, of the State's intention to impose a determinate sentence of up to 30 years.[3] *See generally R.L.H.*, 771 S.W.2d at 701–02.

At a detention hearing before the trial judge with all parties present conducted January 3, 1989, the prosecutor indicated a petition for felony murder would be filed by that Thursday. The State's original petition, which alleged murder, reflects a time-date stamp of January 5, 1989, indicating a filing on that date with the Brazos County Clerk's office. This date is confirmed by subsequent conversations on the

---

**1.** TEX.PENAL CODE ANN. § 19.02 (Vernon 1989).

**2.** TEX.PENAL CODE ANN. § 29.03 (Vernon Supp. 1991).

**3.** Justice Cohen notes that this point of error highlights an anamoly in a due process context between the adult and juvenile criminal systems. Normally, the juvenile system demands the strictest adherence to due process safeguards. But here, the law seems to allow the

chance of a 30 year sentence to be pled by the State in what only could be described as vague terms. The adult system only permits punishment enhancement after specific pleadings and factual findings. *See generally Ex parte Patterson*, 740 S.W.2d 766, 777 (Tex.Crim.App.1987) (trial court committed egregious error in submitting the special issue of use or exhibition of deadly weapon in the absence of a pleading by the State).

record between the lawyers and the judge and is not in dispute.

A detention hearing was held on January 13, 1989, in which activity by the grand jury was discussed on the record between the attorneys.

MR. JUVRUD (for the State): The petition was presented to the Grand Jury of Brazos County, Texas, on the 12th of this month, yesterday. And the Grand Jury did approve and certify that petition to the district court for this case to proceed with determinate sentencing under 53.-045 under the Family Code.

THE COURT: Are you aware of that?

MR. VANCE (for the appellant): Yes, sir, I am.

. . . .

THE COURT: Okay. Just before I get to that though, I want to be sure that he and the Mother are aware of what the Grand Jury did.

MR. VANCE: I talked to both of them, Judge.

THE COURT: Then they are aware of it. And we always admonish him and the Mother carefully, that you don't have to talk to anybody about this case. And you want to be sure that you check with your attorney if you have any question. Do you understand that?

APPELLANT: (Indicating) (Affirmative).

MRS. HOSKINS (Appellant's mother): Yes, sir.

THE COURT: Both of them, Momma and the child?

APPELLANT: Yes, Sir.

In that same hearing, the State moved to waive count III of the petition, described by the prosecutor as "alleging a capital murder charge."

A pretrial hearing was held on January 26, 1989, in which the following statement was made by the prosecutor in the context of replying to a motion to bar prosecution:

MR. JUVRUD: The original detention was—occurred—based on violation of a lawful order of the court on a prior adjudication of this child, which was 157–J–88CC, as well as the new pending charges. The case was taken to the Grand Jury on the 12th of January, 1989. The first Grand Jury which was available to hear the Petition in which they certified and approved the Petition for our (sic) in determinate sentencing. . . .

Then on February 3, 1989, which in one place was labeled a detention hearing and another, a final pretrial, the following exchange occurred:

MR. VANCE: The other thing, is that I have received in the mail a second amended petition filed on January 31, 1989. Basically, it's similar to the original petition in this case. But the State at one point in time after January 5th, but before January 31, of 1989, had waived paragraph II [of the murder charge]. And now that particular paragraph is again included in the petition. And we would object to the inclusion of paragraph II in the second amended petition. . . . And I have found no evidence in the file that that particular petition has been presented to the Grand Jury for its consideration.

MR. JUVRUD: The Grand Jury was presented with the entire petition to begin with. And they gave their approval of the entire petition. After the Grand Jury approved it, the State waived the bottom count on the belief that—.

THE COURT: Are you talking about the robbery?

MR. JUVRUD: No, Your Honor, paragraph II. It was the mistaken belief that that paragraph represented a capital murder charge. After further research, it was discovered that it did not represent a capital murder charge, merely a felony murder charge, which was applicable in this case. It readmitted its petition to reinclude that paragraph, as it does believe that it is one of the grounds that it can proceed on. And it was originally approved by the Grand Jury and then waived afterwards.

THE COURT: Okay. Anything else?

MR. VANCE: No, your honor. Our basic concern is, yes, it was in the original petition of January 5th. It was subsequently waived. And now it is being

reintroduced through the second amended petition. That second amended petition has not been presented to the Grand Jury for its consideration ... I better object.

. . . .

MR. JUVRUD: We waived the last part and then we came back in and decided it was appropriate to the case, and we reentered it on our petition. But it was originally submitted to the Grand Jury.

THE COURT: All right. Then I deny the motion.

■ In his fifth point of error, appellant complains the judgment and commitment order are void because the State did not present the second amended petition to the grand jury. The State argues it was not required to do so, as the original petition had been approved, and the two petitions were identical.

■ Section 53.045 of the family code provides that if the child is accused of one of six penal offenses, one of which is murder, the prosecuting attorney may refer the petition to the grand jury. TEX.FAM.CODE ANN. § 53.045(a) (Vernon Supp.1991). A determinate sentence cannot be imposed if the petition is not approved by a grand jury. TEX.FAM.CODE ANN. § 54.04(d)(2) (Vernon Supp.1991). If the grand jury approves a petition, "the fact of approval shall be certified to the juvenile court, and the certification shall be entered in the record of the case." TEX.FAM.CODE ANN. § 53.045(d) (Vernon Supp.1991).

Appellant specifically objected to the second amended petition because it had not been presented to the grand jury. Appellant's contention is that, as the State waived one of the murder allegations contained in the original petition, when the State reasserted the murder allegation in the amended petition, it was required to again bring the petition before the grand jury.

The State replies that each of the two murder charges in the second amended petition was specifically and separately charged. Because the jury returned a guilty verdict on the first of the two murder charges, the one that had never been dropped and had been approved (as reported by the prosecutor) by the grand jury, error, if any, in the State's failure to present the second amended petition to the grand jury was harmless. We disagree.

■ The requirements of section 53.-045(a) and (d) and section 54.04(d)(2) and (d)(3) are clear—before a determinate sentence may be imposed, a grand jury must approve *the petition made the basis of the judgment.* We conclude the amended petition, which included an allegation that previously had been waived, should have been presented to the grand jury. Our holding is supported by the fact that, not only was the amended petition not presented to the grand jury for approval, but also, the record is devoid of any written indication the original petition was ever presented to the grand jury. Although the prosecutor made numerous affirmations throughout these proceedings that the original petition had been approved by the grand jury, the certification required by section 53.045(d) is not contained in the transcript, either as a separate document or as an attachment to the original petition. Nor is there any type of notation on the docket sheet to indicate the grand jury approved the petition.

We find that a prosecutor's oral representations of approval by a grand jury, even coupled with the assent of a defendant's counsel, is not a "certification" within the meaning of the statute. Without certification of grand jury approval, and the entry of such certification into the record of the case, the trial court was without jurisdiction to impose a determinate sentence. TEX.FAM.CODE ANN. § 54.04(d)(3) (Vernon Supp.1991).

We note one other factor that we believe does not overcome the State's failure to enter into the record a certificate of approval reflecting the grand jury's actions. The judgment contains a non-specific "form" finding by the trial judge of the grand jury's approval of the petition. However, neither litigant here has discussed the impact of the judge's finding within the context of this case.

The recent Tyler Court of Appeals case, *In the Matter of S.B.C.*, 805 S.W.2d 1, 7 (Tex.App.—Tyler 1991, no writ), discusses the "certificate of approval" in the context of a challenge to the certification process. A "certificate of approval" is also referred to in the case of *In the Matter of J.T.H.*, 779 S.W.2d 954, 957 (Tex.App.—Austin 1989). Both cases consider the certificate as a written instrument filed within the record of the case. We agree with the construction of the statute by the Tyler and Austin courts of appeal concerning the "certificate of approval" as constituting a written instrument.

Because the record does not contain a written "certification of approval" from the grand jury approving the State's second amended petition, appellant's fifth point of error is sustained. The judgment is reformed to delete the imposition of a determinate sentence of nine years, and the case is remanded to the trial court for imposition of an indeterminate sentence based upon the finding of delinquent conduct based on the murder allegation.

■ In his sixth point of error, appellant complains the judgment and the commitment order are void because the State did not properly serve him or his mother with the second amended petition made the basis of his prosecution. The appellant states this failure of service deprived the trial court of jurisdiction to enter a final disposition. Appellant admits he was served with the original petition and summons.

The Texas Family Code provides that the juvenile court shall direct issuance of a summons to (1) the child named in the petition, (2) the child's parent, guardian, or custodian, (3) the child's guardian ad litem, and (4) any other person who appears to the court to be a proper or necessary party to the proceeding. TEX.FAM.CODE ANN. § 53.06(a) (Vernon 1986). A copy of the petition must accompany the summons. TEX.FAM.CODE ANN. § 53.06(b). The code also provides that "if a person to be served

with a summons is in this state and can be found, the summons shall be served upon him personally at least two days before the day of the adjudication hearing." TEX.FAM. CODE ANN. § 53.07(a) (Vernon 1986).

The two cases relied upon by appellant are distinguishable because they involve the State's failure to serve the juvenile defendant with the original petition and summons, not with any amended petitions. In *In the Matter of W.L.C.*, 562 S.W.2d 454, 455 (Tex.1978), the juvenile was not served with the original petition to transfer him to district court. The probation officer testified he did not have personal knowledge of whether the juvenile had been served. The trial court then ordered W.L.C. served in open court. The only documentary evidence contained in the record concerning service, was an instrument titled "Precept to Serve" executed by the clerk, which directed the sheriff to serve W.L.C. with a copy of the original petition. The return of service form on the reverse side of the precept was blank. The supreme court reversed the order of transfer, holding that a juvenile must be served with summons and that, absent an affirmative showing of service of summons in the record, the juvenile court was without jurisdiction. *Id.* at 455.

In the second case, *In the Matter of D.W.M.*, 562 S.W.2d 851 (Tex.1978), the State requested the juvenile court to waive its jurisdiction and transfer the juvenile, who was accused of murder, to the district court. The record did not show the juvenile was served with a summons to the transfer hearing. The court of appeals affirmed the transfer because the juvenile waived service of summons by voluntarily appearing and failing to object to the lack of summons. The supreme court reversed, holding that a juvenile must be served with summons, the service must affirmatively appear in the record, and the juvenile cannot waive service. *Id.* at 853.[4]

---

4. We note the reasoning of the Texas Supreme Court in this case is equally applicable to resolving appellant's fifth point of error. Just as the service of summons was the foundation for the trial court's acquisition of jurisdiction in *In the*

*matter of WLC,* likewise is the action of the grand jury in approving an original petition necessary before a trial court can impose a determinate sentence. An affirmative showing in the record of service was required by the

We believe the case of *McBride v. State*, 655 S.W.2d 280 (Tex.App.—Houston [14th Dist.] 1983, no writ), is directly on point. In that case, a second amended petition was served upon McBride and his mother; however, the citation accompanying the petition was defective. Rejecting McBride's argument the State's failure to serve him with a correct citation in the amended petition divested the trial court of jurisdiction, the Fourteenth Court of Appeals held, "when jurisdiction attached [by virtue of a properly served citation in the original petition], the court did not lose jurisdiction because the State may have failed to follow the statutory guidelines in serving appellant with an *amended petition.*" *Id.* at 283. (Emphasis in the original.)

We agree with this reasoning and apply it here. Because appellant and his mother were properly served with the original petition, the trial court acquired jurisdiction over him at that time. The State's failure to serve appellant with the second amended petition did not deprive the trial court of jurisdiction. *Id.; see also In the Matter of R.M.*, 648 S.W.2d 406, 407 (Tex.App.—San Antonio 1983, no writ). Point of error number six is overruled.

■ In his seventh point of error, appellant complains the trial court erred in overruling his "motion to bar prosecution." Appellant asserts the court violated rule 6 of the judicial administration rules by not conducting an adjudication hearing within 10 days after appellant was admitted to a detention facility. This point of error is without merit.

Rule 6 provides that,

[d]istrict and statutory county court judges ... *should,* so far as reasonably possible, ensure that all cases are brought to trial or final disposition in conformity with the following time standards:

**Juvenile Cases** ... (a) Concerning a juvenile in a detention facility: [n]ot later than 10 days following admission to such a facility, *except for good cause shown of record.*

TEX.GOV'T CODE ANN., Title 2, subtitle F, App., rule 6(d) (Vernon 1988 & Supp.1991). Rule 1 of the judicial administration rules provides the rules are promulgated pursuant to section 74.024 of the Texas Government Code. Section 74.024 provides that: "the supreme court may consider the adoption of rules relating to: (1) *nonbinding* time standards for pleading, discovery, motions, and dispositions." TEX.GOV'T CODE ANN. § 74.024(c)(1) (Vernon 1988) (emphasis added).

■ Rule 6 is a discretionary, nonbinding rule, and we will not disturb a judgment for a court's failure to comply with such a rule. In this instance, however, we are of the opinion the trial court did comply with rule 6. Rule 6(d)(4) provides that "nothing herein shall prevent a judge from recessing a juvenile hearing at any stage of the proceeding ... when in the opinion of the judge presiding in the case the best interests of the child and of society shall be served." Between the time appellant was initially detained and the date of trial, at least six detention hearings were held. *See* TEX.FAM.CODE ANN. § 54.01(h) (Vernon 1986). The detention orders filed as a result of these hearings state appellant continued to be detained because of one or more of the following: (1) suitable supervision, care, or protection for him was not provided by his parent, guardian, custodian, or other person; (2) he was accused of committing a felony offense and may be dangerous to himself or others if released; or (3) he was previously found to be a delinquent child or was previously convicted of a penal offense punishable by a term in jail or prison and is likely to commit an offense if released. These detention orders clearly reflect the opinion of the juvenile judge that the best interests of appellant and society would be served by further detention.

The seventh point of error is overruled.

supreme court in *WLC;* no less is required when, as here, there is no affirmative showing in the record the grand jury approved the petition upon which appellant faced the possibility of incarceration for 30 years.

The eighth point of error is that the trial court improperly consolidated a determinate sentencing offense with a nondeterminate sentencing offense. Because our disposition of the fifth point of error reverses the determinate sentence imposed and compels the trial court to enter a nondeterminate sentence, appellant's eighth point of error is also moot.

█ In his ninth point of error, appellant complains that, because he gave an oral statement before he was warned by the magistrate, a written statement he gave while in detention on October 7, 1988, was improperly admitted into evidence. Appellant asserts his oral statement provided the foundation for the written statement. This contention is not supported by the record.

Section 51.09 of the Texas Family Code provides that a child who gives an out-of-court statement must do so knowingly, intelligently, and voluntarily. The statement must be signed in the presence of a magistrate, with no law enforcement officer or prosecuting attorney present. The magistrate must certify he has examined the child outside the presence of any law enforcement officer and has determined the child understands the nature and content of his statement. Tex.Fam.Code Ann. § 51.-09(b)(1)(F) (Vernon 1986).

Oscar Chavarria is a criminal investigator with the Bryan Police Department. As part of his investigation of Michael Ramirez's murder, on October 7, 1988, he took a statement from appellant. Chavarria admitted he spoke to appellant for about five minutes before Judge Hensarling was called to administer the magistrate's warnings, but he stated the conversation was for the limited purpose of finding out if appellant would speak to him, and briefly, what had happened. He stated he did not write anything down during this five minute period. Chavarria denied that most of appellant's oral statements, made before he was warned by the magistrate, were contained in the written statement.

Judge Carolyn Hensarling testified she was called down to the detention center to administer a magistrate's warning to a juvenile. She said the warning is contained on a standardized form and encompasses two pages. The third page is where the officer takes the statement. After the statement is taken, she reads it back to the child to make sure it is true and correct. She then certifies on the warning whether she feels the child voluntarily executed the statement.

In this case, Judge Hensarling identified petitioner's exhibit 2 as the warning documents she administered to appellant on October 7, 1988. She said she felt appellant gave the statement voluntarily, knew what he was doing, and no force or pressure was used in obtaining appellant's signature. Page three was blank when she initially gave appellant his warnings.

Appellant testified he spoke to Chavarria about 10 or 15 minutes before seeing Judge Hensarling. Chavarria asked appellant whether he knew anything about a murder, was he around the area when it occurred, and did Leroy Lewis (a codefendant) have some money the week of the murder. Additionally, appellant stated the written statement he signed was made up by Chavarria *before* he spoke to Judge Hensarling, and he only saw Judge Hensarling once. Appellant denies he received any warnings from Judge Hensarling, and states that, had he received any warnings, he would not have made a statement at all.

Appellant relies on the case of *B.A.G. v. State*, 715 S.W.2d 790 (Tex.App.—Dallas 1986), to support his proposition that, because Chavarria orally took evidence from him before he was warned by the magistrate, his written statement was inadmissible. In *B.A.G.*, a juvenile was arrested in connection with a murder investigation. The arresting officer gave B.A.G. *Miranda* warnings, but did not inform her she could be tried as an adult. The officer questioned B.A.G. for about 85 minutes. After she made incriminating oral statements, the officer brought her before a magistrate, who advised her of her rights. She then gave a written statement substantially the same as her oral statement. B.A.G. signed her written statement in front of a second magistrate. Neither magistrate was informed of B.A.G.'s incriminating oral

statements. The Dallas Court of Appeals reversed B.A.G.'s conviction holding the written statement was inadmissible because it was based on oral statements given before B.A.G. had been warned.

We do not find this authority persuasive for several reasons. First, the Court of Criminal Appeals reversed the Dallas Court on this point. *See Griffin v. State,* 765 S.W.2d 422, 427 (Tex.Crim.App.1989). Second, the Dallas Court of Appeals based its decision on the fact that neither magistrate knew B.A.G. had previously given an incriminating oral statement, and thus, neither magistrate informed B.A.G. her oral statement could not be used against her. Appellant here has not made such an allegation. Finally, we do not believe appellant's initial statements to Chavarria, standing alone, were incriminating; they were no more than responses to generalized investigatory questions. By appellant's own admission, the only things Chavarria asked him were whether he knew about a murder, was he in the vicinity, and did he know whether Leroy Lewis had any money the week Ramirez was killed. Appellant did not implicate himself in any fashion by these statements.

The ninth point of error is overruled.

■ In his tenth point of error, appellant asserts a second statement he made while in detention on October 11, 1988, also was admitted improperly. His complaint is the magistrate's warning was not administered by the magistrate, but by the magistrate's secretary.

Chavarria testified he again spoke with appellant on October 11 for about five minutes before calling the magistrate. Chavarria said he told appellant he had received additional information that appellant knew more about what had happened than appellant had let on in the first conversation. After he spoke to appellant, Chavarria called Judge Dewey to admonish appellant. Judge Dewey was accompanied by his secretary, Marilyn Myrick.

Myrick testified that, although the judge was present, it was she, not Judge Dewey, who actually read the magistrate's warnings to appellant. This was because Judge Dewey has very poor eyesight, and has trouble reading. Only she, the judge, and appellant were in the room. After appellant's statement was typed, Myrick read the statement to appellant; she did not give him the opportunity to read it himself. Upon further questioning, Myrick stated Judge Dewey asked appellant whether he understood what was just read to him and whether he needed to make any changes, omissions, or additions. Appellant indicated he understood what was read and he did not need to make any changes. Judge Dewey then signed the magistrate's certification.

Appellant testified he knew what he was doing when he gave the October 11 statement; he understood he had the right to remain silent, and he voluntarily gave up that right; he said he understood everything when Myrick read his statement back to him.

We find nothing in the family code requiring the magistrate to be the person to physically administer warnings to a defendant. We find it sufficient Judge Dewey was present in room when the warnings were read to appellant by his secretary. Judge Dewey specifically asked appellant whether he understood his statement, and he personally signed the magistrate's certification.

The tenth point of error is overruled.

■ In the eleventh point of error, appellant asserts the trial court improperly charged the jury under the law of parties. This theory was not stated in either the original or the amended petition, and, relying TEX.R.CIV.P. 301, appellant contends the charge allowed the jury to find him guilty on a theory not contained in the pleadings. Appellant properly preserved this point of error by objecting to the charge.

■ We overrule this point of error. An indictment need not plead evidence relied on by the State, i.e. that the defendant is a party. *Swope v. State,* 805 S.W.2d 442, 444–45, 447 (Tex.Crim.App.1991). Moreover, appellant was not harmed by

inclusion of a party instruction. The jury did not have to rely on the acts of others to find appellant guilty. In appellant's second out-of-court statement, he admitted he was present during the commission of the offenses, he took Ramirez's wallet and kept the 4500 pesos he found in it, and he accepted a split of the American money taken from Ramirez. This admission, in conjunction with the testimony of C.R., N.D., and Kenneth Lewis, stating appellant was the person who jumped on Ramirez's head at least once and maybe even twice, was enough for the jury to find appellant himself committed aggravated robbery and murder.

The eleventh point of error is overruled.

In the twelfth point of error, appellant asserts there was no evidence to sustain the jury findings. Appellant readily admits in his brief that if we find his two out-of-court statements admissible, then the no evidence issue would not be applicable. As we have found the statements admissible, we must necessarily find there was some evidence to support the jury's finding of guilt.

The twelfth point of error is overruled.

 A lack of sufficient evidence is appellant's thirteenth point of error. This case is governed by the rules of civil procedure. TEX.FAM.CODE ANN. § 51.17 (Vernon Supp.1991). The rules provide that, in order to preserve a factual insufficiency point of error, a motion for new trial complaining of the insufficiency must be filed. No motion for new trial was filed in this case. Appellant has not preserved this point of error for review. However, in the interest of justice we will consider appellant's point of error.[5]

 In reviewing the sufficiency of the evidence to support a guilty verdict, the evidence is viewed in the light most favor-

able to the verdict. *Flournoy v. State,* 668 S.W.2d 380, 383 (Tex.Crim.App.1984); *Barron v. State,* 773 S.W.2d 44, 46 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd). The critical inquiry is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Rogers v. State,* 795 S.W.2d 300, 303 (Tex.App.—Houston [1st Dist.] 1990, pet. filed). In a juvenile case, the question is whether the evidence considered as a whole shows that the State sustained its burden of proof beyond a reasonable doubt. *In the Matter of H.R.A.,* 790 S.W.2d 102, 103 (Tex.App.—Beaumont 1990, no writ).

The following testimony was adduced at trial. Oscar Chavarria, Carolyn Hensarling, and Marilyn Myrick testified as set out above. Several other witnesses testified as to Ramirez's physical condition and mental state as he lay by the side of the road. None of the witnesses were able to relay any information to the police about Ramirez's assailants, except they were black males.

Dr. J.C. Lee, a pathologist, is the director of laboratories at St. Joseph Hospital in Bryan. He performed the autopsy on Ramirez and testified Ramirez died as a result of a subdural brain hemorrhage.

Three accomplices also testified against appellant. C.R., age 16, also has been charged with aggravated robbery and murder. C.R. said he saw Leroy Lewis kick Ramirez. He could not tell whether Lewis kicked Ramirez in the back or the head. While he never saw appellant kick Ramirez, C.R. testified he later asked appellant if he had kicked Ramirez. Appellant laughed and nodded his head affirmatively.

---

**5.** *See generally Obeidat v. State,* 787 S.W.2d 627, 628 (Tex.Crim.App.1990) (even though defendant waived error by putting on a defense, court reviewed the point as one challenging the sufficiency of the evidence); *Miguez v. State,* 715 S.W.2d 795, 799 (Tex.App.—Houston [14th Dist.] 1986, pet. ref'd) (court considered Miguez's point of error even though he did not correctly

raise his complaint); *de Alberquerque v. State,* 712 S.W.2d 809, 812 (Tex.App.—Houston [1st Dist.] 1986, no pet.) (court considered whether there was sufficiency evidence the State had proved every element of the offense, where appellant's point of error complained of the trial court's failure to quash the indictment).

N.D., age 13, also testified it was Leroy Lewis who initially kicked Ramirez in the back. He said appellant jumped on Ramirez's head, but did not kick him in the head. N.D. denied he ever kicked Ramirez himself.

The final accomplice to testify was Kenneth Lewis, age 19. Lewis testified it was his brother, Leroy, who kicked Ramirez in the back, knocking him down. He further stated he saw appellant jump on Ramirez's head twice, and N.D. kick Ramirez in the upper chest and face.

▄▄ Other than appellant's October 11, 1988 statement, the testimony of these three accomplice witnesses is the only evidence that connects appellant to the offenses. The family code provides that

> an adjudication of delinquent conduct or conduct indicating a need for supervision cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the child with the alleged delinquent conduct or conduct indicating a need for supervision; and the corroboration is not sufficient if it merely shows the commission of the alleged conduct.

TEX.FAM.CODE ANN. § 54.03(e) (Vernon 1986).

To determine whether the testimony of C.R., N.D., and Kenneth Lewis was sufficiently corroborated, we are required to eliminate from consideration the evidence of the accomplice witnesses, and then examine the testimony of the remaining witnesses to see if there is evidence of an incriminating character tending to connect appellant with the commission of the offense. *In the Matter of J.R.R.*, 689 S.W.2d 516, 519 (Tex.App.—Dallas), *aff'd,* 696 S.W.2d 382 (Tex.1985).

The three accomplices were the only witnesses who in any way connected appellant to the crime. Appellant's first out-of-court statement, taken October 7, does not provide sufficient corroboration of the accomplice's testimony. In this first statement, appellant states he met Leroy Lewis at a park; Lewis "hangs out" with C.R.; the next Monday, after appellant heard "that the Mexican was beaten up and that he died," he saw Leroy Lewis with his brother, Kenneth, at about 6:00 p.m.; both Leroy and Kenneth had $10.00; he didn't know how they got the money.

In the second statement, however, appellant does implicate himself in the commission of the offense. He stated:

> There was six of us, [C.R.], Leroy Lewis, Kenneth Lewis, [N.D.], and me. We were walking down the street, on highway 25th and we saw a Mexican walking down 25th street. Leroy Lewis wanted to take his money. Leroy Lewis said "Lets [sic] get him." I said that I wanted to go home. [C.R.] wanted to go with me. About four minutes later, we saw four guys running towards the Harlem Club. Before they ran to the Club, Leroy kicked the Mexican in the back. Leroy jumped up and kicked him in the back. The Mexican fell and looked up. The Mexican fell on his face. [N.D.] ran and hit him in the head. He hit the Mexican in the head with his foot, one time. Leroy started swinging his boots everywhere. [C.R.] took off running. We saw them run towards the Harlem.
>
> We ran towards the Harlem. We got half of the money. I got $10, [C.R.] got $10, [N.D.] got $10, Leroy got $20, Kenneth Lewis got $10. We did not know that Leroy had an extra ten. We split up the money. [C.R.], [N.D.], and I went home. I don't know where Leroy and Kenneth Lewis went. They dropped the wallet and I picked it up. It had $4500 in Mexican dollars, and I kept it. I put the money under a speaker in my house and about five minutes later, it was not there. Kenneth Lewis told us to grab the wallet. Leroy took the wallet out of the Mexican's pants. Leroy took the boots off the Mexican and threw them away. [L.W.] was at my grandmother's house at this time. Kenneth Lewis was on the bike.

We find this statement of appellant is enough evidence of an incriminating character connecting appellant with the commission of the offense to corroborate the accomplices' testimony. We may thus con-

sider the accomplices' testimony in determining the sufficiency of the evidence.

Appellant's statement, combined with the testimony of the three accomplices provided the jury with ample evidence from which it could render a guilty verdict.

The thirteenth point of error is overruled.

In the fourteenth point of error, appellant claims the trial court erred in not allowing the jury to set a term of years for probation. The family code provides the court or the jury may place the child on probation on such reasonable and lawful terms as the court may determine, for a period not to exceed one year. TEX.FAM. CODE ANN. § 54.04(d)(1) (Vernon Supp. 1991). Question No. 2 of the jury charge on disposition asked the jurors if appellant should be placed on probation, to which they replied, "No." The question specifically tracked the language of section 54.-04(d)(1). The trial court was without the authority to instruct the jury any other way. Accordingly, we cannot say the trial court erred in not allowing the jury to set a term of years for probation.

The fourteenth point of error is overruled.

In his last point of error, appellant complains the trial court erred in denying his request to submit the lesser included offenses of voluntary manslaughter, criminal negligent homicide, simple assault, and involuntary manslaughter.

■■■ An offense is a lesser included office if 1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; 2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission; 3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or 4) it consists of an attempt to commit the offense charged or an otherwise included offense. TEX.CODE CRIM.P.ANN. art. 37.09 (Vernon 1981).

■■■ In determining whether a charge on a lesser included offense is required, a two-step analysis is required. First, the lesser included offense must be included within the proof necessary to establish the offense charged. Second, there must also be some evidence in the record that if the defendant is guilty, he is guilty ONLY of the lesser included offense. *Royster v. State*, 622 S.W.2d 442, 446 (Tex. Crim.App.1981) (op. on reh'g). If the evidence raises the issue of a lesser included offense, it must be included in the charge. *Sanchez v. State*, 745 S.W.2d 353, 357 (Tex. Crim.App.1988).

■■■ The State's petition alleged appellant committed the offenses of aggravated robbery and murder. A person commits the offense of robbery if, while in the course of committing theft, and with intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury, or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX.PENAL CODE ANN. § 29.02(a) (Vernon 1974). If in the course of committing a robbery, a person also causes serious bodily injury to another, he has committed aggravated robbery. TEX.PENAL CODE ANN. § 29.03(a)(1) (Vernon Supp.1991).

A person commits the offense of murder if he:

(1) intentionally or knowingly causes the death of an individual;

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual; or

(3) commits or attempts to commit a felony, other than voluntary or involuntary manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual.

TEX.PENAL CODE ANN. § 19.02(a) (Vernon 1989). In light of the elements set out for these offenses, we will now analyze each of

the instructions appellant claims should have been given.

**A. _Voluntary Manslaughter._** A person commits the offense if he causes the death of another under circumstances that would constitute murder under section 19.02 of the Texas Penal Code, except that he caused the death under the immediate influence of sudden passion arising from an adequate cause. TEX.PENAL CODE ANN. § 19.04(a) (Vernon 1989). "Sudden passions" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed, such passion arising at the time of the offense and not solely the result of former provocation. TEX.PENAL CODE ANN. § 19.02(b) (Vernon 1989).

The evidence in this case did not raise the issue of sudden passion. The record reflects Ramirez was merely walking down the street after exiting from a bar, when he was "jumped" by appellant and his friends. There was no evidence Ramirez provoked appellant in any way. The evidence does not raise the issue of sudden passion; therefore, the trial court did not err in failing to include an instruction on voluntary manslaughter.

**B. _Criminally Negligent Homicide._** A person commits this offense if he causes the death of an individual by criminal negligence. TEX.PENAL CODE ANN. § 19.07(a) (Vernon 1989). A person acts with criminal negligence or is criminally negligent when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care an ordinary person would exercise under all the same circumstances as viewed from the actor's standpoint. TEX.PENAL CODE ANN. § 6.03(d) (Vernon 1974). The essence of criminal negligence is the failure of the actor to perceive the risk created by his conduct. _Mendieta v. State,_ 706 S.W.2d 651, 652 (Tex.Crim.App.1986). Criminally negligent homicide is a lesser included offense of murder. _Thomas v. State,_ 699 S.W.2d 845, 847 (Tex.Crim.App.1985).

Before a charge on this particular crime is required, the appellate record must contain evidence showing the accused was _unaware_ of the risk his conduct was creating. _Mendieta,_ 706 S.W.2d at 653; _Saunders v. State,_ 780 S.W.2d 471, 475 (Tex.App.—Corpus Christi 1989, pet. granted). The pathologist at St. Joseph Hospital testified Ramirez died from a subdural hemorrhage in the brain. C.R. testified appellant admitted to him he had kicked Ramirez. N.D. stated he saw appellant jump on Ramirez's head. Kenneth Lewis also stated he saw appellant jump on Ramirez's head. We find no evidence appellant was unaware of the risk he created by his conduct. Further, there is no evidence indicating that, if appellant was guilty of causing Ramirez's death, he was guilty only of criminally negligent homicide. _See Royster,_ 622 S.W.2d at 446; _Saunders,_ 780 S.W.2d at 475. Thus, the trial court did not err in refusing to instruct the jury on this lesser included offense.

**C. _Simple Assault._** Assault occurs when someone intentionally, knowingly, or recklessly causes bodily injury to another, threatens another with imminent bodily injury, or intentionally or knowingly causes physical contact with another when the actor knows or should reasonably believe the other will regard the contact as offensive or provocative. TEX.PENAL CODE ANN. § 22.01 (Vernon 1989). Assault is a lesser included offense of aggravated robbery. _Ex parte Drewery,_ 710 S.W.2d 148, 152 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd).

In appellant's second statement to Chavarria, he stated he took Ramirez's wallet and he kept the money he found in it. The accomplices' testimony showed appellant participated in the beating that enabled him to receive $10. That beating resulted in Ramirez's death. There is no evidence in this record that, if appellant was guilty of injuring Ramirez, he was guilty of inflicting only bodily injury and not serious bodily injury. The trial court did not err in refusing this instruction.

**D. _Involuntary Manslaughter._** Involuntary manslaughter occurs when a person

recklessly causes the death of another. *Lugo v. State*, 667 S.W.2d 144, 147 (Tex. Crim.App.1984); TEX.PENAL CODE ANN. § 19.05(a)(1) (Vernon 1989). A person acts recklessly when he or she is aware of, but consciously disregards, a substantial and unjustifiable risk the circumstances exist or the result will occur. *Lugo,* 667 S.W.2d at 147. If there was not enough evidence to raise an issue of reasonable doubt whether appellant was acting other than intentionally or knowingly, then the trial court properly excluded this instruction. *Zepeda v. State*, 797 S.W.2d 258, 264 (Tex. App.—Corpus Christi 1990, pet. ref'd).

Two accomplices testified appellant jumped on Ramirez's head after Leroy Lewis delivered the initial blow. In appellant's second statement to Chavarria, he does not state he was kept at the scene against his will or he was made to jump on Ramirez. In the statement, appellant admits to taking Ramirez's wallet and keeping the money he found. The State showed appellant intentionally engaged in a beating that resulted in Ramirez's death. Since the evidence did not show appellant's conduct was merely reckless, the trial court did not err in failing to submit an instruction on involuntary manslaughter.

Appellant's fifteenth point of error is overruled.

The judgment of the trial court is reformed to delete the nine year determinate sentence, and the cause is remanded to that court for imposition of an indeterminate sentence. As reformed, the judgment of the trial court is affirmed.